Donald M. GOMES, Plaintiff, Appellee,

v.

RHODE ISLAND INTERSCHOLASTIC LEAGUE, et al., Defendants, Appellants.

No. 79–1181.

United States Court of Appeals, First Circuit.

Argued June 8, 1979.

Decided Aug. 31, 1979.

---

Robert B. Mann, Providence, R. I., with whom Mann & Roney, James J. McAleer, Albert B. West, and Manning, West, Santaniello & Pari, Providence, R. I., were on brief, for appellants.

Robert D. Parrillo, Providence, R. I., with whom Hanson, Curran & Parks, Providence, R. I., was on brief, for appellee.

John G. Poust, Wayne F. Flaza, Margaret S. Garvey, and Rooks Pitts, Fullagar & Poust, Chicago, Ill., on brief for The National Federation of State High School Athletic Associations, amicus curiae.

Drew S. Days, III, Asst. Atty. Gen., Jessica Dunsay Silver, and Joan F. Hartman, Attys., Dept. of Justice, Washington, D. C., on brief for the United States of America, amicus curiae.

Before COFFIN, Chief Judge, CAMPBELL and BOWNES, Circuit Judges.

LEVIN H. CAMPBELL, Circuit Judge.

Donald M. Gomes, a volleyball enthusiast who had played on an all-male volleyball team at his high school in Pennsylvania, was excluded from interscholastic competition when he transferred to Rogers High School in Newport, Rhode Island, for his senior year. Rogers' only volleyball team was all-female and played in competition under the auspices of the defendant, the Rhode Island Interscholastic League. The League provides interscholastic volleyball competition only for all-female teams and disqualifies teams on which any male plays. As a result, Rogers High allowed Gomes to join its all-female team but did not use him in League competition.

Gomes brought this suit against the League at the beginning of its 1979 volleyball season, alleging that its rule against male participation in volleyball competition violated the fourteenth amendment and Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681–1686, which generally prohibits sex discrimination in educational programs receiving federal funds, 20 U.S.C. § 1681(a). Without reaching the constitutional issues, the district court ruled in Gomes' favor on the basis of the following regulation promulgated by the Department of Health, Education and Welfare under Title IX:

"(a) *General.* No person shall, on the basis of sex, be excluded from participation in . . . any interscholastic, intercollegiate, club or intramural athletics offered by a recipient, and no recipient shall provide any such athletics separately on such basis.

(b) *Separate Teams.* Notwithstanding the requirements of paragraph (a) of this section, a recipient may operate or sponsor separate teams for members of each sex where selection . . . is based upon competitive skill or the activity involved is a contact sport. *However, where a recipient operates or sponsors a team in a particular sport for members of*

*one sex but operates or sponsors no such team for members of the other sex, and athletic opportunities for members of that sex have previously been limited, members of the excluded sex must be allowed to try-out for the team offered unless the sport involved is a contact sport. . . ."*

45 C.F.R. § 86.41(a), (b) (emphasis added). In the district court's view, the clause (b) exception for separate-sex teams was made inapplicable by the passage italicized, since defendants sponsored no men's volleyball teams and opportunities for boys to play volleyball previously had been non-existent. In so interpreting the regulation, the court rejected defendants' argument that the reference in clause (b) to previously limited athletic opportunities refers to overall athletic opportunities.[1] Under defendants' interpretation, Rogers did not have to allow Gomes to play in all-female volleyball competition because men had always been offered a very comprehensive athletic program—albeit not one including volleyball. Indeed, Rogers' own program in particular was said to have been outstanding for men, far exceeding the offerings for women even though women's opportunities were now improving.

The district court rendered its decision on May 1, in the midst of the volleyball season,

and ordered the League to accommodate Gomes as a member of the Rogers team. As defendants persuaded us that the district court's order would disrupt the remainder of the sports season[2] and that there existed a probability of success on the merits, we stayed implementation of that order pending appellate review. We also allowed the motions of the United States and the National Federation of State High School Athletic Associations to participate on appeal as amici curiae,[3] and set the case on an expedited schedule.

Despite the speed with which this case reached us,[4] the last interscholastic game of the League's volleyball season had been played and Gomes was about to graduate from Rogers High School when we heard argument on June 8. Defendants, apparently confident of obtaining a favorable decision on the merits, urged that the case nevertheless was not moot because it involved events "capable of repetition, yet evading review," *Southern Pacific Terminal Co. v. ICC,* 219 U.S. 498, 515, 31 S.Ct. 279, 283, 55 L.Ed. 310 (1911). Plaintiff, by contrast, asked that we dismiss the appeal as moot under *DeFunis v. Odegaard,* 416 U.S. 312, 94 S.Ct. 1704, 40 L.Ed.2d 164 (1974). As we conclude that the "capable of repetition, yet evading review" exception to the

1. Under the district court's interpretation, the requirement that males be allowed to play on an all-female team would not apply if an all-male team were established. Defendants' represent, however, that there is insufficient interest in volleyball among their male high school students to permit the successful formation of all-male teams.

2. There are different rules for women's and men's volleyball; most notably, the net is set higher for men than for women. Thus the prospect of mixed-sex competition raised a question as to the rules applicable to the remainder of the season. In addition, a number of the League's member teams represented private women's high schools and were unwilling to compete against mixed-sex teams.

3. The Department of Justice, speaking on behalf of the Department of Health, Education and Welfare, which promulgated the Title IX regulation in issue, indicated that HEW interpreted the Title IX regulation in the manner urged by defendants, and disagreed with the

district court's construction. In its view, the focus of 45 C.F.R. § 86.41 was not on whether men had had opportunities to play volleyball in the past, but rather on whether their overall athletic opportunities had been limited. The intervenor National Federation of State High School Athletic Associations took a similar position. Plaintiff, in oral argument, in urging us to uphold the lower court, stressed arguments other than the district court's rationale based on the regulation.

4. The Interscholastic League's 1979 volleyball season was scheduled from March 27 until approximately May 24. Gomes filed his complaint around March 28 and filed an amended complaint on April 2. The district court held a hearing on Gomes' request for a preliminary injunction on April 4, issued its opinion on May 1, and entered its order on May 3. We stayed implementation of that order pending appeal and set argument on the merits for the earliest date practicable.

usual definition of a "live" case or controversy necessary for federal adjudication, U.S.Const. art. III, sec. 2, does not apply, we agree with plaintiff .that this appeal must be dismissed as moot. We do not, therefore, reach the merits.

There remains no live controversy between Gomes and defendants: the volleyball season is over and Gomes, having graduated, will never again attempt to play in interscholastic high school competition. These circumstances are similar to those in *DeFunis v. Odegaard, supra,* 416 U.S. 312, 94 S.Ct. 1704, 40 L.Ed.2d 164 (1974), which presented a challenge to allegedly discriminatory admissions policies of the University of Washington Law School. DeFunis had attended the school under a Supreme Court order effective pending appeal and was assured of graduating when the Court heard argument on the case. The Court dismissed the case as moot, noting that federal court jurisdiction " 'depends upon the existence of a case or controversy' " and that " 'federal courts are without power to decide questions that cannot affect the rights of litigants in the case before them,' " 416 U.S. at 316, 94 S.Ct. at 1705–1706, quoting *Liner v. Jafco, Inc.,* 375 U.S. 301, 306 n. 3, 84 S.Ct. 391, 11 L.Ed.2d 347 (1964), and *North Carolina v. Rice,* 404 U.S. 244, 246, 92 S.Ct. 402, 30 L.Ed.2d 413 (1971), respectively. In this case, too, since Gomes has not sought any monetary relief, nothing that we might decide now as to the merits would affect his rights vis a vis defendants.

 The definition of "mootness" is not inflexible, of course; federal courts may decide cases that present questions "capable of repetition, yet evading review," even though the immediate controversy between the parties may have dissipated. *Southern Pacific Terminal Co. v. ICC, supra,* 219 U.S. 498, 515, 31 S.Ct. 279, 283, 55 L.Ed. 310 (1911); *Roe v. Wade,* 410 U.S. 113, 125, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973). Defendants here point out that the Inter-

scholastic League divides the school year into three sport seasons—fall, winter, and spring—and that each lasts something less than three months. As this case, which began with the beginning of the spring season, reached us with exceptional speed and yet still not before the end of the season, they argue that the question of the validity of their rules as to single-sex teams may recur each year and yet always evade review if we consider this case moot. But our focus must be on whether the question will recur not as to other high school students but as to Gomes, a high school senior, who sued only on behalf of himself and not as a class representative. *See Sosna v. Iowa,* 419 U.S. 393, 398–400, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975). Just as the *DeFunis* case did not present a question capable of repetition as to DeFunis, who also sued individually, because he never again would go through the Law School's admission process, 416 U.S. at 218–19, 94 S.Ct. 1704, so this case does not present such a question as to Gomes.[5] *See County of Los Angeles v. Davis,* 440 U.S. 625, 99 S.Ct. 1379, 59 L.Ed.2d 642 (1979); *Weinstein v. Bradford,* 423 U.S. 147, 96 S.Ct. 347, 46 L.Ed.2d 350 (1975).

The district court's judgment is vacated and the case is remanded for dismissal of plaintiff's complaint. *See Great Western Sugar Co. v. Nelson,* —— U.S. ——, 99 S.Ct. 2149, 60 L.Ed.2d 735 (1979) (per curiam); *Duke Power Co. v. Greenwood County,* 299 U.S. 259, 267, 57 S.Ct. 202, 81 L.Ed. 178 (1936).

*So ordered.*

---

5. Had this case been brought as a class action by a freshman, sophomore or junior, it would present a question "capable of repetition, yet evading review" as to the class or the individual plaintiff. *See Sosna v. Iowa,* 419 U.S. 393,

398–400, 95 S.Ct. 553, 557, 42 L.Ed.2d 532 (1975). Thus we need not be concerned that the validity of the Interscholastic League's rule may never be subject to full adjudication on the merits.