In the Matter of CHRIS MULARADELIS et al., Respondents, v HALDANE CENTRAL SCHOOL BOARD et al., Appellants.

Second Department, May 5, 1980

## APPEARANCES OF COUNSEL

*Plunkett & Jaffe (Phyllis S. Jaffe* of counsel), for appellants.

*Constantine Mularadelis* for respondents.

### OPINION OF THE COURT

TITONE, J.

The issue presented on appeal is whether, under title 9 of the Education Amendments of 1972 (US Code, tit 20, § 1681 *et seq.),* regulations promulgated thereunder (45 CFR 86.31, 86.34, 86.41 [a], [b]) and under the circumstances of this case, the student petitioner should have been afforded the opportunity to become a member of the girls' tennis team at the high school of the appellant school board. Subdivision (a) of section 1681 of title 20 of the United States Code provides, *inter alia:* "(a) No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance".

Regulations enacted by the Department of Health, Education and Welfare (HEW) for administering the educational amendments to title 9 are comprehensive and far-reaching (45 CFR 86.1-86.71). With respect to physical education programs or activities operated by institutions receiving Federal financial assistance, sections 86.31, 86.34 and 86.41 of the Code of Federal Regulations provide, *inter alia,* as follows:

"§ 86.31. Education programs and activities.

"(a) *General* * * * no person shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any academic, extracurricular * * * or other education program or activity operated by a

recipient which receives [or] benefits from Federal financial assistance."

"§ 86.34. Access to course offerings.

"A recipient shall not provide any course or otherwise carry out any of its education program or activity separately on the basis of sex, or require or refuse participation therein by any of its students on such basis, including * * * physical education * * *.

"(c) This section does not prohibit separation of students by sex within physical education classes or activities during participation in wrestling, boxing, rugby, ice hockey, football, basketball and other sports the purpose or major activity of which involves bodily contact."

"§ 86.41. Athletics.

"(a) *General.* No person shall, on the basis of sex, be excluded from participation in * * * or otherwise be discriminated against in any interscholastic, intercollegiate, club or intramural athletics offered by a recipient, and no recipient shall provide any such athletics separately on such basis.

"(b) *Separate teams.* Notwithstanding the requirements of paragraph (a) of this section, a recipient may operate or sponsor separate teams for members of each sex where selection for such teams is based upon competitive skill or the activity involved is a contact sport. However, where a recipient operates or sponsors a team in a particular sport for members of one sex but operates or sponsors no such team for members of the other sex, *and athletic opportunities for members of that sex have previously been limited,* members of the excluded sex must be allowed to try-out for the team offered unless the sport involved is a contact sport * * *

"(c) *Equal opportunity.* A recipient which operates or sponsors interscholastic, intercollegiate, club or intramural athletics shall provide equal athletic opportunity for members of both sexes. In determining whether equal opportunities are available the Director will consider, among other factors:

"(1) *Whether the selection of sports and levels of competition effectively accommodate the interests and abilities of members of both sexes*" (emphasis supplied).

In the spring term of the 1977-1978 scholastic year, petitioner Chris Mularadelis, then a 10th year student at the high school of the Haldane Central School District, was one of the two male members of the school's 12-member girls' tennis

team. Over the years efforts by school administrative officers to encourage a sufficient number of male students to participate in a tennis program and to form a male team in that sport were unsuccessful.

However, during the 1978-1979 school year, and specifically on March 6, 1979, the petitioner student, then an 11th year student, was informed by the head of the school's male coaches that he would not be permitted to participate on the girls' tennis team during the spring term on the ground that such participation would violate title 9 of the Education Amendments of 1972 (see US Code, tit 20, § 1681 *et seq.*). On March 8 a school athletic policy was established which stated, *inter alia,* that "[s]ince the opportunities for girls to participate are more limited than for boys, the school district shall prohibit the participation of boys on teams and in leagues organized to provide competition among girls."

At the time of the adoption of the aforesaid policy, the petitioner student was ranked number two singles player on the girls' tennis team. Such ranking effectively denied another female student an opportunity to become a member of the girls' tennis team. Moreover, the appellant school district was then sponsoring 11 boys' teams, providing more than 180 positions for male students, and 6 girls' teams, providing only 74 positions for female students. There are approximately the same number of boys and girls in the district's junior-senior high school.

Special Term vacated the school board's determination precluding the petitioner student from playing on the girls' high school tennis team. It was of the view that notwithstanding the greater number of male athletic teams in the Haldane Central School District, refusing an opportunity to play on the girls' tennis team was not within either the letter or spirit of title 9.

Special Term also concluded that it was unfair to keep the petitioner student from engaging in a sport in which he has proven ability, especially since he was permitted to play on the girls' tennis team the previous year.

The dispute in this instance centers upon the interpretation to be given the italicized portion of subdivision (b) of 45 CFR 86.41, promulgated under title 9, which explicitly covers separate sex teams in school athletics, to wit: "However, where a recipient operates or sponsors a team in a particular sport for members of one sex but operates or sponsors no such team for

members of the other sex, *and athletic opportunities for members of that sex have previously been limited,* members of the excluded sex must be allowed to try-out for the team offered unless the sport involved is a contact sport." (Emphasis supplied.)

Appellants argue in effect that the phrase "athletic opportunities for members of that [excluded] sex have previously been limited" should be interpreted in a general sense, namely that where *over-all* athletic opportunities for members of a sex excluded from participation in a particular sport have been limited in the past, members of the excluded sex must be allowed to try out for the team from which they are now excluded. Thus, because only women previously suffered limited athletic opportunities, the phrase in dispute refers only to women. Such interpretation in this instance would permit the formation of a separate female tennis team without, *inter alia,* males being allowed to try out for such female team because over-all athletic opportunities for males have not been limited in the past. As the record indicates, just prior to this dispute the subject high school had 11 boys' teams and only 6 girls' teams.

On the other hand petitioners contend, in effect, that the phrase means opportunity in a particular sport. Thus, in view of the fact, *inter alia,* that athletic opportunities in tennis, a noncontact sport, have been previously limited at the high school of the appellant school district, petitioners argue that the petitioner male student must be permitted to try out for the girls' tennis team.

Petitioners find support for their position in *Gomes v Rhode Is. Interscholastic League* (469 F Supp 659). In *Gomes,* the plaintiff student, Donald M. Gomes, wished to become a member of the all female volleyball team of the high school he attended. There was not sufficient interest among other boys at the school to warrant fielding a male volleyball team. Although he succeeded in making the female team, Gomes, because of his sex, was not allowed to play in interscholastic league games. Gomes brought his action for a preliminary injunction under title 9 (US Code, tit 20, § 1681 *et seq.).* In construing subdivision (b) of 45 CFR 86.41, set forth above, the United States District Court for Rhode Island held (at pp 664-666) that the phrase "and athletic opportunities for members of that [excluded] sex have previously been limited", referred to the particular sport under consideration. Although the

Federal court found that both the broad and narrow interpretations of the regulation were plausible, it chose plaintiff's because it believed that defendant's approach might run afoul of the equal protection clause. As the court viewed it, the establishment of an all female team in a particular sport which totally excluded males from playing and in which males only have limited opportunities to play, was not directed toward the special disadvantages women have suffered in that sport, and may be impermissibly overbroad (469 F Supp, at p 664).* I disagree with the interpretation given section 86.41 both by Special Term and the Federal court in *Gomes.*

■ ■ In my opinion, an interpretation that the regulations quoted above apply to opportunities in a particular sport does not reflect an accurate view of the regulations. First of all it should be noted that the operative sentence in subdivision (b) of 45 CFR 86.41 begins: "However, where a recipient operates or sponsors a team in a *particular sport* for members of one sex but operates or sponsors no such team for members of the other sex" (emphasis supplied). From such language it is manifest that the regulation comes into play only in determining whether members of the excluded sex may participate in a situation where a team has been established solely for persons of the other sex. The criteria used to make such determination then follows in broad and general language, to wit, whether "athletic opportunities for members of [the excluded] sex have previously been limited". Had Congress intended that the previous limitation with respect to gender refer to a particular sport, then it is reasonable to assume that the following language or similar language would have been utilized (bracketed matter added for illustration): "athletic opportunities [in such sport or in a particular sport] for members of [the excluded] sex have previously been limited", or, "athletic opportunities for members of [the excluded] sex have previously been limited [in a particular sport or in such sport]". However, since the phrase "particular sport" was used earlier in the disputed sentence, and was not used later therein to modify or circumscribe the words "athletic opportunities", I conclude that "particular sport" does not apply to the "athletic opportunities" criteria set forth later in the sentence. Where words sensibly apply to a particular antecedent branch of a sentence in a statute or regulation, they should not be

---

* The complaint in *Gomes* was eventually dismissed as moot when plaintiff was graduated from the school (604 F2d 733).

extended so as to apply to that which follows (see *Matter of New York Tel. Co. v Ferris,* 257 App Div 415, affd 282 NY 667; *Matter of Budd v Valentine,* 283 NY 508). Generally, qualifying words and phrases are to be applied to those words and phrases preceding them, and ordinarily are not to be construed as extending to following words (82 CJS, Statutes, § 334).

■ Implicit in the determination in *Gomes (supra)* seems to be a fear that if the words "athletic opportunities for members of that sex have previously been limited" (45 CFR 86.41 [b]) refer to past participation in over-all sports activities, and not in a particular sport, then such interpretation of subdivision (b) of section 86.41 might have the resulting effect of permitting schools to establish a multitude of all female teams so as to tip the balance in athletic opportunities in favor of the female sex. Such fear is unwarranted in view of the language found in the provision immediately following (§ 86.41, subd [c]) which, *inter alia,* states that any schools receiving Federal financial assistance must provide "equal athletic opportunity for members of both sexes." Subdivision (c) sets forth a number of factors to be considered in determining compliance with the equal opportunity mandate, including: "(1) whether the selection of sports and levels of competition effectively accommodate the *interests and abilities of members of both sexes".*

In its September, 1975 "Memorandum to Chief State School Officers, Superintendents of Local Educational Agencies and College and University Presidents", on the subject "Elimination of Sex Discrimination in Athletic Programs", the Department of Health, Education and Welfare provided answers to some questions concerning regulation 86.41 (c), which are also relevent to regulation 86.41 (b), to wit:

"QUESTION: If there are sufficient numbers of women interested in basketball to form a viable women's basketball team, is an institution which fields a men's basketball team required to provide such a team for women?

"ANSWER: One of the factors to be considered by the Director in determining whether equal opportunities are provided is whether the selection of sports and levels of competition effectively accommodate the interests and abilities of members of both sexes. Therefore, if a school offers basketball for men and the only way in which the institution can accommodate the interests and abilities of women is by offering a separate basketball team for women, such a team must be provided.

"QUESTION: If there are insufficient women interested in participating on a women's track team, must the institution allow an interested woman to compete for a slot on the men's track team?

"ANSWER: *If athletic opportunities have previously been limited for women at that school,* it must allow women to compete for the men's team if the sport is a noncontact sport such as track. The school may preclude women from participating on a men's team in a contact sport. *A school may preclude men or women from participating on teams for the other sex if athletic opportunities have not been limited in the past for them, regardless of whether the sport is contact or noncontact."* (Emphasis supplied.)

That the thrust of the legislation under title 9 and the regulations promulgated thereunder are directed to an overall program rather than to each individual sport offered at an affected institution of learning, may also be gleaned from the following additional excerpts taken from the September, 1975 memorandum of HEW to responsible school officials:

"Where a team in a non-contact sport, the membership of which is based on skill, is offered for members of one sex and not for members of the other sex, and athletic opportunities for the sex for whom no team is available have previously been limited, individuals of that sex must be allowed to compete for the team offered. For example, if tennis is offered for men and not for women and a woman wishes to play on the tennis team, if women's sports have previously been limited at the institution in question, that woman may compete for a place on the men's team. However, this provision does not alter the responsibility which a recipient has with regard to the provision of equal opportunity. * * *

"OVERALL OBJECTIVE *The point of the regulation is not to be so inflexible as to require identical treatment in each of the matters listed under section 86.41 (c).* During the process of self-evaluation, institutions should examine *all* of the athletic opportunities for men and women and make a determination as to whether each has an equal opportunity to compete in athletics in a meaningful way. *The equal opportunity emphasis in the regulation addresses the totality of the athletic program of the institution rather than each sport offered."* (Emphasis supplied.)

Petitioners argue that appellants have not proven discrimination against females in the past other than to state that

there are 11 male and 6 female teams at the subject school. Thus, petitioners continue, appellants having failed to follow procedures for ascertaining whether males or females have suffered discrimination pursuant to title 9 and its regulations, the petitioner male student should not be denied the opportunity to be a member of the girls' tennis team. Such argument has no merit. Title 9 and its regulations do not require school authorities to prove discrimination against females prior to excluding participation by a male on a particular female team. The regulation permits exclusion of a person because of sex where over-all athletic opportunities in the past for members of that person's sex have not been limited (45 CFR 86.41 [b]). Certainly, where a school has 11 male teams and 6 female teams, the over-all athletic opportunities for males cannot logically be viewed as "limited".

Petitioners also contend that the exclusion of the petitioner student from the girls' tennis team is violative of the equal protection clause of the Fourteenth Amendment. I disagree. The "over-all athletic opportunity" standard, which I believe is the one envisioned under the title 9 regulations, permits school authorities to preclude males from participating in a particular sport in a given situation. It does not present an absolute bar to males where members of that sex have had, and continue to have, greater over-all athletic opportunities. In the case at bar male students under the regulations have an equal opportunity to participate in athletics in general.

Section 86.41, as interpreted by appellants (and I believe, correctly), has as its purpose the reduction and ultimate elimination of the disparity in over-all scholastic athletic opportunities between male and female students. Thus, precluding male students from becoming members of the girls' tennis team is a discernible and permissible means toward redressing disparate treatment of female students in scholastic athletic programs (cf. *Califano v Webster,* 430 US 313, 318; *Gruenwald v Gardner,* 390 F2d 591, cert den *sub nom. Gruenwald v Cohen,* 393 US 982). Notwithstanding the alleged favorable treatment granted female students herein, the over-all athletic opportunities at the appellants' schools for male students still exceed those afforded their female counterparts (cf. *Gruenwald v Gardner, supra,* p 592). Special recognition and favored treatment can constitutionally be afforded members of the female sex under the circumstances. It is only the "invidious discrimination" or the classification which is pat-

ently arbitrary and utterly lacking in rational justification which is barred either by the due process or equal protection clauses of the Fifth and Fourteenth Amendments, respectively (*Flemming v Nestor,* 363 US 603, 611).

Accordingly, we reverse.

HOPKINS, J. P., GULOTTA and COHALAN, JJ., concur.

Judgment of the Supreme Court, Putnam County, dated April 2, 1979, reversed, on the law, without costs or disbursements, and proceeding dismissed on the merits.