Gregory B. CLARK, a minor By and Through his next best friend, guardian ad litem and natural guardian, Douglas H. CLARK, Jr., et al., Plaintiffs-Appellants,

v.

ARIZONA INTERSCHOLASTIC ASSOCIATION, an Arizona corporation, et al., Defendants-Appellees.

No. 82–5132.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 6, 1982.

Decided Dec. 2, 1982.

As Amended on Denial of Rehearing Jan. 20, 1982.

Douglas H. Clark, Jr., Tucson, Ariz., for plaintiffs-appellants.

John C. Richardson, Tucson, Ariz., for defendants-appellees.

Before ANDERSON, FERGUSON, and NELSON, Circuit Judges.

NELSON, Circuit Judge:

Appellants seek review of the district court's judgment dismissing their claim that Appellees' policy of precluding boys from playing on girls' interscholastic volleyball teams in Arizona high schools violates the equal protection clause. The district court held that the policy was a permissible means of attempting to insure equality of opportunity for girls in Arizona interscholastic sports and of redressing past discrimination. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

The Appellants, plaintiffs below, are students in Arizona High Schools, and have demonstrated their prowess in volleyball by participating on national championship teams sponsored by the Amateur Athletic Union. The plaintiffs have not, however, been able to participate on their high school volleyball teams. Their schools only sponsor interscholastic volleyball teams for girls, and a policy of the Arizona Interscholastic Association (the AIA) has been interpreted to preclude boys from playing on girls' teams, even though girls are permitted to participate on boys' athletic teams. The AIA's policy on matters relating to gender discrimination is set forth in its resolution of October 19, 1981:

2. That the present rules regarding volleyball are silent as to whether or not boys['] volleyball is permitted, and that should sufficient interest on the part of the AIA members be evinced so that the Legislative Council finds it desirable to prepare rules for and sanction interscholastic competition in volleyball for boys, that such action would certainly be permissible under the current Constitution and Bylaws of the AIA;

3. That the nondiscrimination policy of the AIA permits participation by girls on boys['] teams in non-contact sports in order to compensate for the girls['] historical lack of opportunity in interscholastic athletics, however, boys are not allowed to play on girls['] teams in non-contact sports since boys historically have had ample opportunity for participation and currently have available to them sufficient avenues for interscholastic participation, and since to allow boys to play on girls['] teams in non-contact sports would displace girls from those teams and further limit their opportunities for participation in interscholastic athletics.

The following stipulation was presented at trial:

Generally, high school males are taller, can jump higher and are stronger than high school females. There are six basic skills necessary in volleyball—serving, passing, setting, digging, hitting and blocking. Of these skills, hitting and blocking are enhanced by physical size, strength and vertical jump. Males generally have the potential to be better hitters and blockers than females and thus may dominate these two skills in volleyball.

A second stipulation indicates that these physiologically-derived differences in athletic potential have real impact on the game of volleyball. Under the rules of the AIA, girls' volleyball teams use a net that is substantially lower than that used by boys' teams. According to the stipulated facts there seems to be no question, then, that boys will on average be potentially better volleyball players than girls.

The plaintiffs brought this action in September, 1981, seeking to enjoin the AIA from enforcing its policy which prevents

boys from playing on girls' volleyball teams. After preliminary relief was denied, the parties submitted the case for judgment on stipulated facts. The district court entered final judgment denying the plaintiffs relief, and this timely appeal was taken.

The trial court found that the rules and regulations of the AIA do not violate the equal protection clause of the fourteenth amendment. It held that the maintenance of a girls-only volleyball team "is substantially related to and serves the achievement of the important governmental objective" of: 1) promoting equal athletic opportunities for females in interscholastic sports, and 2) redressing the effects of past discrimination. Specifically, the court held:

> [M]ore favorable treatment for females is permissible if such treatment redresses society's longstanding disparate treatment of women. [Citation omitted]. Precluding male students from becoming members of the girls' volleyball team is a permissible means of redressing the past discrimination against females in high school interscholastic athletic programs.

## DISCUSSION

The only issue presented on appeal is whether the trial court was correct in holding that the AIA's policy of prohibiting boys from playing on girls' volleyball teams did not deprive plaintiffs of equal protection under the fourteenth amendment.

■ Although the state action issue was not raised by the parties, we note that the AIA regulations in question meet the state action requirements of the fourteenth amendment. The stipulated facts indicate that the AIA is a voluntary association of all public and most private high schools in the state of Arizona. The member public schools play a substantial role in determining and enforcing the policies and regulations of the AIA. School administrators and coaches represent the member schools on AIA advisory committees. The legislative authority of the AIA in all matters pertaining to interscholastic activities is vested in the legislative council. The legislative council consists of delegates elected by the member schools in addition to four members from the various state school boards. The AIA rulemaking procedure integrally involves the member schools and school districts in the decisionmaking process. The rules and regulations promulgated by the AIA bind all public high schools in Arizona, although any school can voluntarily withdraw from the AIA at any time. The ultimate enforcement of the rules is the responsibility of the AIA, the member schools and the public officials of those schools and school districts. Furthermore, both athletic and nonathletic activities sanctioned by the AIA take place on public school grounds.

Every court to consider the question has concluded that associations like the AIA are so intertwined with the state that their actions are considered state action. *Yellow Springs Board of Education v. Ohio High School Athletic Association,* 647 F.2d 651, 653 (6th Cir.1981); *Brenden v. Independent School District 742,* 477 F.2d 1292, 1295 (8th Cir.1973); *Mitchell v. Louisiana High School Athletic Association,* 430 F.2d 1155, 1157 (5th Cir.1970); *Louisiana High School Athletic Association v. St. Augustine High School,* 396 F.2d 224, 227 (5th Cir.1968); *Gilpin v. Kansas State High School Athletic Association,* 377 F.Supp. 1233, 1237 (D.Kan. 1973); *Bucha v. Illinois High School Association,* 351 F.Supp. 69, 73 (N.D.Ill.1972); *Haas v. South Bend Community School Corporation,* 259 Ind. 515, 519–21, 289 N.E.2d 495, 498 (1972). *See Oklahoma High School Athletic Association v. Bray,* 321 F.2d 269, 273 (10th Cir.1963); *Reed v. Nebraska School Activities Association,* 341 F.Supp. 258, 260–61 (D.Neb.1972). We agree that the activities of the AIA are so intertwined with the state that the regulations of the AIA must be considered state action. We are therefore free to reach the issue of whether the AIA's policy of prohibiting boys from playing on girls' volleyball teams deprived plaintiffs of equal protection under the fourteenth amendment.

■ The equal protection clause of the fourteenth amendment is implicated only when a classification treats persons similar-

ly situated in different ways. *Reed v. Reed,* 404 U.S. 71, 75, 92 S.Ct. 251, 253–54, 30 L.Ed.2d 225, 229 (1971). A gender based discrimination is subject to a level of scrutiny somewhere between the level of "traditional" equal protection analysis (minimal scrutiny), *Frontiero v. Richardson,* 411 U.S. 677, 683, 93 S.Ct. 1764, 1768, 36 L.Ed.2d 583, 589 (1973), and the highest level of scrutiny (strict scrutiny), *Graham v. Richardson,* 403 U.S. 365, 375–76, 91 S.Ct. 1848, 1854, 29 L.Ed.2d 534, 544 (1971). This intermediate level of scrutiny which applies to gender classifications is clearly set forth in *Craig v. Boren,* 429 U.S. 190, 197, 97 S.Ct. 451, 457, 50 L.Ed.2d 397, 407 (1976):

"To withstand constitutional challenge, previous cases establish that classification by gender must serve important governmental objectives and must be substantially related to achievement of those objectives."

This standard continues to be the Supreme Court standard for testing gender based classifications. *Mississippi University for Women v. Hogan,* —— U.S. ——, 102 S.Ct. 3331, 73 L.Ed.2d 1090 (1982). Rephrased, then, the issue in this case is whether the AIA's policy regarding boys not playing volleyball on the girls' team fails substantially to further an important governmental objective.

In applying this standard, the Supreme Court is willing to take into account actual differences between the sexes, including physical ones. In *Michael M. v. Sonoma County Superior Court,* 450 U.S. 464, 468–69, 101 S.Ct. 1200, 1204, 67 L.Ed.2d 437, 442 (1981), Justice Rehnquist, writing for a plurality noted that the "Court has consistently upheld statutes where the gender classification is not invidious, but rather realistically reflects the fact that the sexes are not similarly situated in certain circumstances." 450 U.S. at 469, 101 S.Ct. at 1204, 67 L.Ed.2d at 442. In that case, the Court upheld a statutory rape statute that applied only to males, recognizing that since only women were subject to pregnancy and preventing teenage pregnancy was a legiti-

mate purpose of the statute, the statute could apply differently to the different sexes. The Court reasoned that the legislature could punish the participant (the male) who would suffer few of the consequences of his conduct while the woman suffered virtually all the harmful consequences.

In *Kahn v. Shevin,* 416 U.S. 351, 94 S.Ct. 1734, 40 L.Ed.2d 189 (1974), the Court upheld a property tax exemption for widows but not widowers, recognizing the different financial opportunities available to men and women. *Id.* at 353, 94 S.Ct. at 1736. In *Craig v. Boren,* 429 U.S. at 204, 97 S.Ct. at 460, 50 L.Ed.2d at 411, the Court conceded that a sex classification could be upheld if sex represented "a legitimate accurate proxy" in a regulatory scheme. *See also Schlesinger v. Ballard,* 419 U.S. 498, 95 S.Ct. 572, 42 L.Ed.2d 610 (1975) (different promotion system for male and female naval officers approved because of different opportunities for combat duty).

On the other hand, the Supreme Court has soundly disapproved of classifications that reflect " 'archaic and overbroad' generalizations, *Schlesinger v. Ballard,* [419 U.S. 498, 508, 95 S.Ct. 572, 577, 42 L.Ed.2d 610], or ' "old notions," ' *Stanton v. Stanton,* 421 U.S. 7, 14, 95 S.Ct. 1373, 1377, 43 L.Ed.2d 688 ·(1975)." *Califano v. Goldfarb,* 430 U.S. 199, 207, 97 S.Ct. 1021, 1027, 51 L.Ed.2d 270, 276 (1977) (plurality opinion). Most recently, in *Mississippi University for Women v. Hogan,* —— U.S. ——, 102 S.Ct. 3331, 73 L.Ed.2d 1090 (1982), the Court struck down a gender based admissions policy when the policy's proposed compensatory objective was without factual justification.

The courts have had little trouble with the situation converse to the one at bar, where females are excluded from participation in a sport. In *Brenden v. Independent School District 742,* 477 F.2d 1292 (8th Cir. 1973), the Eighth Circuit held that schools could not prohibit girls from playing on a boys' team, at least in non-contact sports.[1]

When schools have offered separate teams for boys and girls, courts have gener-

1. A number of state and federal courts have reached a similar result. *See, e.g., Morris v. Michigan State Board of Education,* 472 F.2d

1207 (6th Cir.1973); *Hoover v. Meiklejohn,* 430 F.Supp. 164 (D.Col.1977) (disapproving rule that prohibited girls from playing on boys' soc-

ally approved prohibitions of girls' participation on boys' teams. In *O'Conner v. Board of Education*, 645 F.2d 578 (7th Cir.), cert. denied, 454 U.S. 1084, 102 S.Ct. 641, 70 L.Ed.2d 619 (1981), the court held that plaintiff could not demonstrate a reasonable likelihood of success on the merits of her claim that she be allowed to participate on a boys' basketball team when "separate but equal" teams were provided for boys and girls.

The courts' treatment of the issue here is not as well settled as in the two related situations discussed above. Some recent cases, however, although all in inferior state courts, have upheld the exclusion of boys from girls' teams in situations such as the one at bar.[2] In *Petrie v. Illinois High School Athletic Association*, 75 Ill.App.3d 980, 31 Ill.Dec. 653, 394 N.E.2d 855 (1979), the Appellate Court of Illinois concluded that even under a strict scrutiny analysis, the exclusion was a legitimate means of providing athletic opportunities for girls. The court noted that the classification of teams based on sex was "based on the innate physical differences between the sexes, [rather than on] generalizations that are 'archaic' (*Schlesinger v. Ballard* (1975), 419 U.S. 498, 508, 95 S.Ct. 572, 577, 42 L.Ed.2d 610, 618), [or attitudes of] romantic paternalism (*Frontiero v. Richardson* (1973), 411 U.S. 677, 684, 93 S.Ct. 1764, 1769, 36 L.Ed.2d 583, 590)." 75 Ill.App.3d at 989, 31 Ill.Dec. at 660, 394 N.E.2d at 862. The court acknowledged that the sexual classification could be avoided by classifying directly on the basis of physical differences such as height or weight, but concluded that such

classifications would be "too difficult to devise," 75 Ill.App.3d at 988, 31 Ill.Dec. at 660, 394 N.E.2d at 862, primarily because of strength differentials between the sexes. Handicapping competitions, the court concluded, would be difficult and contrary to the interest of achieving the best competition possible. Other schemes, such as multi-tiered teams (for example, with varsity and junior varsity squads), or having a separate boys' team were rejected by the court as being too expensive to impose on the schools. Finally, the court concluded that sex was "the only feasible classification to promote the legitimate and substantial state interest of providing for interscholastic athletic opportunities for girls." 75 Ill. App.3d at 989, 31 Ill.Dec. at 660, 394 N.E.2d at 862.

Another case reaching the same result is *Mularadelis v. Haldane Central School Board*, 74 A.D.2d 248, 255–57, 427 N.Y.S.2d 458, 463–64 (N.Y.App.Div.1980). In that case, the Appellate Division of the Supreme Court of New York held that if overall athletic opportunities for males were equal, the equal protection clause was not violated by exclusion of boys from any particular team.

While *Mularadelis*, 74 A.D.2d at 255–57, 427 N.Y.S.2d at 463–64, says that only *overall* athletic opportunities must be equal, most cases such as *Mass. Interscholastic Athletic Ass'n*, 378 Mass. 342, 393 N.E.2d 284, conclude that the denial of an opportunity in a specific sport, even when overall opportunities are equal, can be a violation of the equal protection clause. We believe that while a lack of overall equality of athletic opportunity certainly

---

cer team—a contact sport team); *Reed v. Nebraska School Activities Association*, 341 F.Supp. 258 (D.Neb.1972); *Haas v. South Bend Community School Corporation*, 259 Ind. 515, 289 N.E.2d 495 (1972).

**2.** *See Hoover v. Meiklejohn*, 430 F.Supp. at 170 (The court noted):

> Given the lack of athletic opportunity for females in past years, the encouragement of female involvement in sports is a legitimate objective and separation of teams [by sex] may promote that purpose. [Citations omitted]. It may also justify the sanction of some

sports only for females, of which volleyball may be an example).

*But see Gomes v. Rhode Island Interscholastic League*, 469 F.Supp. 659 (D.R.I.), *vacated as moot*, 604 F.2d 733 (1st Cir.1979) (exclusion of boys from girls' volleyball team prohibited when no boys' team offered); *Attorney General v. Massachusetts Interscholastic Athletic Association*, 378 Mass. 342, 393 N.E.2d 284 (1979) (exclusion of boys from girls' teams prohibited under strict scrutiny mandated by state's equal rights amendment; in dictum court added that exclusion could *not* withstand even *minimal* scrutiny, 378 Mass. at 356, 393 N.E.2d at 292).

raises its own problems, the presence of such equality cannot by itself justify specific inequality of opportunity in any given sport. The question, then, is whether denying boys the particular opportunity to compete on a girls' volleyball team, even when boys' overall opportunity is not inferior to girls', can be justified as substantially related to an important governmental interest.

■ As discussed above, the governmental interest claimed is redressing past discrimination against women in athletics and promoting equality of athletic opportunity between the sexes. There is no question that this is a legitimate and important governmental interest. *Petrie,* 75 Ill.App.3d at 989, 31 Ill.Dec. at 660, 394 N.E.2d at 862.

The only question that remains, then, is whether the exclusion of boys is substantially related to this interest. The question really asks whether any real differences exist between boys and girls which justify the exclusion; i.e. are there differences which would prevent realization of the goal if the exclusion were not allowed.

The record makes clear that due to average physiological differences, males would displace females to a substantial extent if they were allowed to compete for positions on the volleyball team. Thus, athletic opportunities for women would be diminished. As discussed above, there is no question that the Supreme Court allows for these average real differences between the sexes to be recognized or that they allow gender to be used as a proxy in this sense if it is an accurate proxy. *See, e.g. Kahn v. Shevin,* 416 U.S. at 355, 94 S.Ct. at 1737, 40 L.Ed.2d at 193; *Michael M. v. Sonoma County Superior Court,* 450 U.S. at 469, 101 S.Ct. at 1204, 67 L.Ed.2d at 442; *Orr v. Orr,* 440 U.S. 268, 280–82, 99 S.Ct. 1102, 1112–13, 59 L.Ed.2d 306, 319–21 (1979). This is not a situation where the classification rests on

" 'archaic and overbroad' generalizations [citation omitted]," *Califano v. Goldfarb,* 430 U.S. at 207, 97 S.Ct. at 1027, 51 L.Ed.2d at 276, or "the baggage of sexual stereotypes," *Orr v. Orr,* 440 U.S. at 283, 99 S.Ct. at 1114, 59 L.Ed.2d at 321. Nor is this a situation involving invidious discrimination against women, *Michael M.,* 450 U.S. at 475, 101 S.Ct. at 1207, 67 L.Ed.2d at 446, or stigmatization of women. The AIA is simply recognizing the physiological fact that males would have an undue advantage competing against women for positions on the volleyball team. *Petrie,* 75 Ill.App.3d at 988–89, 31 Ill.Dec. at 660, 394 N.E.2d at 862. The situation here is one where there is clearly a substantial relationship between the exclusion of males from the team and the goal of redressing past discrimination and providing equal opportunities for women.

■ We recognize that specific athletic opportunities could be equalized more fully in a number of ways. For example, participation could be limited on the basis of specific physical characteristics other than sex, a separate boys' team could be provided [3], a junior varsity squad might be added, or boys' participation could be allowed but only in limited numbers.[4] The existence of these alternatives shows only that the exclusion of boys is not *necessary* to achieve the desired goal.[5] It does not mean that the required substantial relationship does not exist. Cases such as *Kahn v. Shevin* show that absolute necessity is not required before a gender based classification can be sustained. In *Kahn,* the tax credit could have been determined on the basis of actual need rather than on females' tendency on average to have a greater need. Nevertheless, the court allowed the classification.

In this case, the alternative chosen may not maximize equality, and may represent

---

**3.** This would be constitutionally permissible. *Gomes,* 469 F.Supp. at 664; *See Vorchheimer v. School District of Philadelphia,* 532 F.2d 880 (3d Cir.1976), *aff'd mem.,* 430 U.S. 703, 97 S.Ct. 1671, 51 L.Ed.2d 750 (1977) (separate boys' and girls' *schools* permissible).

**4.** All of these alternatives were rejected by the *Petrie* court as either too impractical or otherwise unnecessary to the constitutionality of the

exclusion alternative. *See,* note 6, *infra.* But see, *Mass. Interscholastic Athletic Ass'n,* 393 N.E.2d at 295.

**5.** The *Petrie* court, however, did conclude that the problems with the various other alternatives were enough to create a "substantial element of necessity" for the exclusion of boys. 75 Ill.App.3d at 990, 31 Ill.Dec. at 661, 394 N.E.2d at 863. *See,* note 5, *supra.*

trade-offs between equality and practicality. But since absolute necessity is not the standard, and absolute equality of opportunity in every sport is not the mandate, even the existence of wiser alternatives than the one chosen does not serve to invalidate the policy here since it is substantially related to the goal. That is all the standard demands. *Kahn v. Shevin,* 416 U.S. at 356 n. 10, 94 S.Ct. at 1737–38 n. 10, 40 L.Ed.2d at 193–94 n. 10. While equality in specific sports is a worthwhile ideal, *it should not be purchased at the expense of ultimate equality of opportunity to participate in sports.* As common sense would advise against this, neither does the Constitution demand it.

AFFIRMED.