**Edward KLECZEK and Alyce Kleczek, On Behalf of Their Son, Brian KLECZEK**

v.

**RHODE ISLAND INTERSCHOLASTIC LEAGUE, INC.; Arthur B. Campbell, Superintendent of Schools for South Kingstown, Rhode Island; Eric D. Wertheimer, Principal, South Kingstown High School; the School Committee of the Town of South Kingstown; Suzanne R. Browning, Michael Chadwick, Patricia A. Ciccone, Joan H. Crothers, Cynthia G. Collins, James H. Deluca, Jr., Lesley J. Mills, in their capacities as members of the School Committee of the Town of South Kingstown.**

Civ. A. No. 91–0091L.

United States District Court,
D. Rhode Island.

Aug. 1, 1991.

Robert D. Parrillo, Hanson, Curran, Parks & Whitman, Providence, R.I., for plaintiffs.

Paul A. Ward, Jr., James F. McAleer, McAleer & McAleer, Providence, R.I., David J. Kehoe, Warwick, R.I., for defendants.

## MEMORANDUM AND ORDER

LAGUEUX, District Judge.

Plaintiffs Edward Kleczek and Alyce Kleczek brought this action on behalf of their son Brian, a South Kingstown High School student who desires to play on that school's girls' field hockey team. Defendants are the Rhode Island Interscholastic League, Inc. ("RIIL"), which is a private nonprofit organization, and various officials associated with South Kingstown High School, including the Superintendent of Schools, the Principal, and the School Committee and its individual members.

Presently before the Court is plaintiffs' motion for preliminary injunction. Plaintiffs seek an order enjoining defendants from preventing or interfering with Brian's participation in interscholastic field hockey. Plaintiffs also seek an order enjoining defendants from obstructing the South Kingstown High School field hockey team's participation in interscholastic competition because of the fact that Brian is male. For the reasons set forth below, plaintiffs' motion for a preliminary injunction must be denied.

## I. BACKGROUND

In August of 1990, at the beginning of his sophomore year, Brian Kleczek tried out for the South Kingstown High School girls' field hockey team. Based upon his skills, the team coach determined that Brian was best qualified to compete on the junior varsity squad. The coach did not have to cut any players to make room for Brian. The total number of players interested in competing did not exceed the maximum number that the coach indicated would be the roster limit. In short, any student interested and committed made the team; ability only determined placement on either the varsity or junior varsity team. Of course, if many more students had tried out for the team, the coach would have had to exclude some to keep a manageable number.

Brian became interested in playing on the team because his older sister had played varsity field hockey for South

Kingstown High and also because he had himself played the sport in physical education class at the high school. Because South Kingstown High School does not field a boys' field hockey team, nor do any such teams exist in Rhode Island, Brian decided to try-out for the girls' team.[1]

Brian's parents supported his decision to try-out for the team. On August 27, 1990, they wrote to the athletic director at the high school requesting his permission to allow Brian to play. The principal of the high school, defendant Eric Wertheimer, then requested the RIIL to allow Brian to compete. The RIIL refused, pointing to Article 25, Section 1 of its Rules and Regulations which limits competition in field hockey to only girls. Prompted by the Kleczeks, Mr. Wertheimer then requested the RIIL to waive the application of Article 25, Section 1 in Brian's case. A committee of the RIIL conducted a hearing on the requested waiver and heard testimony from several witnesses. It thereafter concluded, by a unanimous vote, that no waiver should be permitted and that Brian should not be allowed to join the team. The RIIL notified Mr. Wertheimer of its decision on September 26, 1990. As a result, Brian spent last fall on the sidelines, serving as a manager for the team and occasionally joining in team practices.

Plaintiffs filed this suit on February 21, 1991. They alleged that the actions of the defendants violate Brian's rights under Title IX (20 U.S.C. § 1681), the federal equal protection clause (U.S. Const. amend. XIV), Section 16–38–1.1 of the General Laws of Rhode Island, and Article I, Section 2 of the Rhode Island Constitution. A hearing was held on plaintiffs' motion for a preliminary injunction on May 20, 1991. The matter is now in order for decision.

## II. DISCUSSION

The First Circuit has recently reaffirmed the well-settled standard that governs a district court's determination of a motion for preliminary injunction. The four-part test requires careful consideration of the following factors:

(1) The likelihood of success on the merits;

(2) The potential for irreparable injury;

(3) A balancing of the relevant equities (most importantly, the hardship to the nonmovant if the restrainer issues as contrasted with the hardship to the movant if interim relief is withheld); and

(4) The effect on the public interest of a grant or denial of the restrainer.

*Narragansett Indian Tribe v. Guilbert,* 934 F.2d 4, 5 (1st Cir.1991). Application of this standard to the facts of this case mandates denial of plaintiffs' motion for a preliminary injunction. Denial of the motion is necessary primarily because plaintiffs have failed to demonstrate a likelihood of success on the merits. In addition, consideration of the other three factors supports the denial of injunctive relief.

### A. *Probability of Success*

■ It is "critical" for a party seeking a preliminary injunction to demonstrate a probability of success on the merits. *Narragansett Indian Tribe,* 934 F.2d at 6. Of course, a party need not *prove* its claims at the preliminary injunction stage, only that it is *likely* to be able to prove its claims later. Plaintiffs have not done this. Indeed, at this point, the chances of plaintiffs actually succeeding on the merits appear quite slim. *See id.* (noting that conclusions as to probability of success are only statements of "probable outcomes"). The Court reaches this conclusion because plaintiffs have failed to demonstrate the existence of federal funding which makes Title IX applicable. Furthermore, even if Title IX is assumed to apply, plaintiffs have not shown that it is likely that they would succeed under the plain meaning of the applicable regulations. In addition, plaintiffs have not shown that they are likely to succeed on their claim under the federal equal protection clause. Because success on both federal claims appears unlikely, the

---

**1.** South Kingstown High School does field three fall teams that allow male participation: foot-     ball, cross-country, and soccer.

Court would have the discretion to refuse to exercise jurisdiction over the pendent state claims.

### 1. *Title IX*

■ Title IX prohibits sex discrimination in any "program or activity receiving Federal financial assistance." 20 U.S.C. § 1681. Both the RIIL and the South Kingstown athletic program are programs or activities within the prospective reach of Title IX. *See* 20 U.S.C. § 1687. However, because neither appears to receive federal financial assistance, they remain outside of Title IX's grasp.

The funding issue was explored carefully by counsel at the hearing held on this motion. David D. Gainey, the Chairman of the RIIL's Principal's Committee on Athletics, testified that the league receives no federal funds. Indeed, he also testified that the league does not even receive state funds. Instead, the league is funded entirely from dues collected from member schools, revenues collected from state championship events, and corporate sponsorship of some of those championships.

In addition, defendant Arthur Campbell, the Superintendent of Schools for South Kingstown, testified about the school system's receipt of federal funds. On examination by plaintiffs' counsel, Mr. Campbell stated that the school system receives federal funds and also pays membership dues to RIIL. However, when examined in more detail by RIIL's attorney, Mr. Campbell testified that the school system only receives "restrictive" federal funds, which are to be used for specific designated purposes such as vocational education programs, math and science training, reading programs, and so on. He also testified that no federal funds are used to support any school activity, including athletics.

On this evidence, plaintiffs are very unlikely to prevail on their Title IX claim. Proving that South Kingstown High School receives some federal money and that it in turn expends some money for membership in the RIIL is legally insufficient for Title IX purposes. The First Circuit has clearly held that Title IX adopts a "programmatic approach rather than an institutional approach to combating sex discrimination in education." *Rice v. President and Fellows of Harvard College,* 663 F.2d 336, 339 n. 1 (1st Cir.1981) (citing *Othen v. Ann Arbor School Bd.,* 507 F.Supp. 1376, 1380–83 (E.D.Mich.1981), *aff'd,* 699 F.2d 309 (6th Cir.1983)), *cert. denied,* 456 U.S. 928, 102 S.Ct. 1976, 72 L.Ed.2d 444 (1982). *See also North Haven Bd. of Educ. v. Bell,* 456 U.S. 512, 537, 102 S.Ct. 1912, 1926, 72 L.Ed.2d 299 (1982) (noting the "program-specific focus" of Section 1681 of Title IX).

Thus, in order to even have a chance of succeeding on their Title IX claim, plaintiffs must demonstrate that the RIIL and the South Kingstown athletic program are recipients of federal funds. Because the prospect of that happening appears remote, the Court must hold that plaintiffs have failed to demonstrate a likelihood of success on the merits of their Title IX claim. *See Yellow Springs Exempted Village School Dist. Bd. of Educ. v. Ohio High School Athletic Ass'n,* 647 F.2d 651, 656 (6th Cir.1981); *Lantz by Lantz v. Ambach,* 620 F.Supp. 663, 665 (S.D.N.Y.1985).

■ Even if Title IX eventually proves to be applicable, the Court believes that plaintiffs have not shown a likelihood of succeeding under the regulations promulgated under the authority of Title IX. The applicable regulation provides in pertinent part:

(a) General. No person shall, on the basis of sex, be excluded from participation in, be denied the benefits of, be treated differently from another person or otherwise be discriminated against in any interscholastic, intercollegiate, club or intramural athletics offered by a recipient, and no recipient shall provide any such athletics separately on such basis.

(b) Separate teams. Notwithstanding the requirements of paragraph (a) of this section, a recipient may operate or sponsor separate teams for members of each sex where selection for such teams is based upon competitive skill or the activity involved is a contact sport. However, where a recipient operates or sponsors a team in a particular sport for members

of one sex but operates or sponsors no such team for members of the other sex, *and athletic opportunities for members of that sex have previously been limited,* members of the excluded sex must be allowed to try-out for the team offered unless the sport involved is a contact sport. For the purposes of this part, contact sports include boxing, wrestling, rugby, ice hockey, football, basketball and other sports the purpose or major activity of which involves bodily contact.

45 C.F.R. § 86.41 (emphasis added).

Under the obvious plain meaning of the regulation, Brian need not be provided the opportunity to play on the girls' field hockey team because athletic opportunities at South Kingstown High School have not previously been limited for members of his sex. Indeed, the evidence introduced at the hearing on this motion clearly establishes that only the female sex has had limited athletic opportunities at the high school.

Of course, *Gomes v. Rhode Island Interscholastic League,* 469 F.Supp. 659 (D.R.I.), *vacated,* 604 F.2d 733 (1st Cir. 1979), held that to read the regulation to refer to "overall" athletic opportunities for one sex would give rise to serious questions about the regulation's constitutionality. *Id.* at 664. To avoid inviting such questions, *Gomes* construed the regulation to refer to the opportunities of members of one sex to participate in a *particular* sport. Thus, under the *Gomes* construction of the regulation, "A separate and exclusive female team may be established only when males previously had, and presumably continue to have, adequate athletic opportunities to participate in that sport." *Id.* at 665.

Plaintiffs here simply can not point to *Gomes* to support their contention that they are likely to succeed on the merits of their Title IX claim. For one thing, other courts have called into question the necessity of *Gomes's* construction of the regulation, which disregarded the plain language of the regulation and substituted new language to avoid a feared constitutional problem. *See, e.g., Muraradelis v. Haldane Cent. School Bd.,* 74 A.D.2d 248, 427

N.Y.S.2d 458, 463–64 (1980). Indeed, since the date of the *Gomes* decision, other courts have ruled that it is constitutionally permissible to enforce the plain meaning of the regulations. *See infra* Part II.B.2.

Furthermore, the subsequent history of the *Gomes* decision must be considered. The District Court granted injunctive relief on May 1, 1979. Seven days later, the First Circuit stayed the injunction. It did so because it believed "the district court's order would disrupt the sports season" and because it believed that the RIIL, which was the defendant in the action, had demonstrated a "probability of success on the merits." *See Gomes v. Rhode Island Interscholastic League,* 604 F.2d 733, 735 (1st Cir.1979). Despite the First Circuit's expedited handling of the appeal, "the League's volleyball season had been played and Gomes was about to graduate" from high school by the time oral argument was heard on June 8, 1990. *Id.* The Court, therefore, dismissed the appeal as moot and remanded the case for dismissal of Gomes's complaint. Certainly, this subsequent history casts a shadow over the precedential value of the District Court's decision in *Gomes.*

Furthermore, even if a *Gomes*-like construction of the phrase "and athletic opportunities for members of that sex have previously been limited" was appropriate, another clause of the same regulation will probably prohibit plaintiffs from succeeding under Title IX. Section 86.41(b) provides that "members of the excluded sex must be allowed to try-out for that team *unless the sport involved is a contact sport.*" (emphasis added). The regulation then lists several examples of contact sports such as football, rugby, and basketball "the purpose or major activity of which involves bodily contact." 45 C.F.R. § 86.-41(b).

Plaintiffs argue that field hockey is a "non contact" sport, and therefore contend that the "unless" clause of Section 86.41(b) does not preclude Brian's inclusion on the team. However, the evidence presented to the Court indicates that field hockey is in

reality an "incidental contact" sport, more akin to basketball than volleyball or tennis.

For example, Ms. Victoria Tefft, the South Kingstown field hockey coach, testified that the rules do not allow body contact between players ("checking") and that penalties are imposed for violations. Nevertheless, she conceded that players often do come into contact with each other, especially when the officiating is poor. Furthermore, she testified that novice players frequently violate a basic tenet of the game when moving the ball by placing their bodies between the ball and an opponent. In addition to body contact, Ms. Tefft testified that players "frequently" get hit by both the ball and an opposing player's stick, and wear shin guards and mouth guards to protect against serious injury.

Ms. Elizabeth Marquis, field hockey coach at Pilgrim High School, testified that several types of contact are inherent in a field hockey game including the ball hitting players' shins, lifted balls and lifted sticks that hit other parts of the body, and head-on collisions.

Field hockey obviously involves a great deal of incidental contact. The Title IX regulations do not require teams to offer try-outs to members of an excluded sex when a contact sport is involved. *See Lantz by Lantz,* 620 F.Supp. at 665 (applying this principle in the context of football). Although the purpose of field hockey is not to make bodily contact, such contact is inevitable in a sport that combines running, sticks, a hard ball, and a wide-open playing field.

In sum, plaintiffs have not shown that they are likely to succeed on the merits of their Title IX claim for three reasons: (1) the programs and activities of the defendants in question do not receive federal funds; (2) the overall athletic opportunities for males at South Kingstown High School have not been limited; and (3) the evidence indicates that field hockey is not a "non-contact" sport.

### 2. *Equal Protection Clause*

■ Plaintiffs have also failed to demonstrate a probability of success on the mer-

its of their equal protection claim. In order to uphold a statutory classification based on gender, the defendants here would have the burden of showing that "the classification serves 'important governmental objectives and that the discriminatory means employed' are 'substantially related to the achievement of those objectives.' " *Mississippi Univ. for Women v. Hogan,* 458 U.S. 718, 724, 102 S.Ct. 3331, 3336, 73 L.Ed.2d 1090 (1982). Defendants will most likely prevail under that standard. Indeed, in *Clark v. Arizona Interscholastic Ass'n,* 695 F.2d 1126, 1131 (9th Cir.1982), *cert. denied,* 464 U.S. 818, 104 S.Ct. 79, 78 L.Ed.2d 90 (1983), the Ninth Circuit held that the policy of an interscholastic league similar to the RIIL of precluding boys from playing on a girls' volleyball team did not violate the equal protection clause. The Court determined that there was "clearly a substantial relationship between the exclusion of males from the team and the goal of redressing past discrimination and providing equal opportunities for women." *Id.*

It is beyond question that redressing the disparate athletic opportunities available to males and females is an important governmental interest. *See Mularadelis,* 427 N.Y.S.2d at 464; *see also Hoover v. Meiklejohn,* 430 F.Supp. 164, 170 (D.Colo.1977) (noting that because the athletic opportunity for females has historically been limited, "the encouragement of female involvement in sports is a legitimate objective"). Excluding males from female teams is substantially related to achieving that objective. *See Clark,* 695 F.2d at 1131; *Hoover,* 430 F.Supp. at 170. *But see Attorney General v. Massachusetts Interscholastic Athletic Ass'n,* 378 Mass. 342, 393 N.E.2d 284 (1979) (holding that such a classification could not pass muster under the strict scrutiny required by the Massachusetts Equal Rights Amendment). For these reasons, plaintiffs have not demonstrated that they are likely to prevail on their claim under the equal protection clause.

### 3. *State Claims*

■ The Court need not inquire into whether plaintiffs have shown a likelihood of success on their state claims under Sec-

 

tion 16–38–1.1 of the Rhode Island General Laws, which prohibits sex discrimination in the public schools, and Article I, Section 2 of the Rhode Island Constitution, which prohibits sex discrimination by the state, its agents or anyone doing business with the state. If plaintiffs' federal claims indeed prove to be without merit, then there no longer will be an independent basis of federal subject matter jurisdiction in this suit. In that situation, this Court would have the discretion to refuse to exercise pendent jurisdiction over the state claims. *Jones v. State of Rhode Island,* 724 F.Supp. 25, 34 (D.R.I.1989).

### B. *The Other Factors*

Plaintiffs' failure to establish the likelihood of their success on the merits is alone sufficient to permit this Court to deny their motion for a preliminary injunction. However, a review of the three other factors involved in the preliminary injunction standard also counsel denial of plaintiffs' motion. First, Brian, who is about to start his junior year, will not suffer irreparable injury if the motion is denied. This case should be reached on its merits well before his high school eligibility expires. Second, a balancing of the equities of the situation weighs in the defendants' favor. Withholding injunctive relief simply means that Brian must wait until this case is resolved on its merits. Granting injunctive relief would interject a substantial degree of uncertainty and disruption into the efforts of school officials to field a team and the efforts of the RIIL to organize and run a uniform league. Because plaintiffs' chances of ultimate success on the merits appear so meagre at this point, the wiser course is to avoid imposing such hardship on the defendants in the first instance. Finally, allowing injunctive relief would not only affect the parties to this action, but all those associated with interscholastic field hockey in Rhode Island. Certainly, consideration of their interest in well-settled rules favors denial of plaintiffs' motion.

### III. CONCLUSION

In sum, an analysis of the four-part standard for passing on a motion for prelimi-

nary injunction requires this Court to deny plaintiffs' motion. Most importantly, plaintiffs have not shown a likelihood of success on the merits. In addition, the three other factors favor not granting interim injunctive relief. Therefore, plaintiffs' motion for preliminary injunction is hereby denied.

It is so ordered.