PAN AMERICAN COMPUTER CORPO-RATION, et al., Plaintiffs, Appellants,

v.

DATA GENERAL CORPORATION, Defendant, Appellee.

No. 80–1725.

United States Court of Appeals, First Circuit.

Argued June 4, 1981.

Decided June 26, 1981.

Rafael Escalera-Rodriguez, Santurce, P. R., with whom Clara E. Lopez-Baralt, and Saldana & Lopez-Baralt, Santurce, P. R., were on brief, for appellants.

Samuel T. Cespedes, San Juan, P. R., with whom Rafael Perez-Bachs, Hector Martinez Jimenez, Santurce, P. R., and McConnell, Valdes, Kelley, Sifre, Griggs & Ruiz-Suria, San Juan, P. R., were on brief, for appellee.

Before CAMPBELL and BOWNES, Circuit Judges, and MAZZONE,* District Judge.

LEVIN H. CAMPBELL, Circuit Judge.

Pan American Computer Corporation (PACC) appeals from the district court's dissolution of an injunction *pendente lite* it had previously issued under 10 L.P.R.A. § 278b–1 [1] prohibiting Data General Corporation (DGC) from terminating a dealership contract under which PACC distributed and serviced DGC products in Puerto Rico. The district court had originally entered the injunction, as authorized by statute, after considering "the interests of all parties concerned and the purposes of the public policy contained in this chapter." The court prop-

---

* Of the District of Massachusetts, sitting by designation.

1. 10 L.P.R.A. § 278 provides, in pertinent part, as follows:

§ 278. Definitions

For the purposes of this chapter, the following terms shall have the meanings expressed below, save when the context clearly indicates otherwise:

(d) Just cause: nonperformance of any of the essential obligations of the dealer's contract, on the part of the dealer, or any action or omission on his part that adversely and substantially affects the interests of the principal or grantor in promoting the marketing or distribution of the merchandise or service.

§ 278a. Termination of relationship

Notwithstanding the existence in a dealer's contract of a clause reserving to the parties the unilateral right to terminate the existing relationship, no principal or grantor may directly or indirectly perform any act detrimental to the established relationship or refuse to renew said contract on its normal expiration, except for just cause.

§ 278b. Damages

If no just cause exists for the termination of the dealer's contract for detriment to the established relationship, or for the refusal to renew same, the principal shall have executed a tortious act against the dealer and shall indemnify it to the extent of the damages caused him . . . .

§ 278b–1. Provisional remedy

In any litigation in which there is directly or indirectly involved the termination of a dealer's contract or any act in prejudice of the relation established between the principal or grantor and the dealer, the Court may grant, during the time the litigation is pending solution, any provisional remedy or measure of an interdictory nature to do or to desist from doing, ordering any of the parties, or both, to continue, in all its terms, the relation established by the dealer's contract, and/or to abstain from performing any act or any omission in prejudice thereof. In any case in which the provisional remedy herein provided is requested, the Court shall consider the interests of all parties concerned and the purposes of the public policy contained in this chapter.

erly did not make formal findings on the usual preliminary injunction criteria of irreparable harm and probability of success on the merits, *see DeMoss v. Kelly Services, Inc.*, 493 F.2d 1012, 1015 (1st Cir. 1974), although its factual findings made at that time suggest a tentative view that PACC had up to then substantially performed its obligations under the dealership contract, and that the balance of hardship weighed in PACC's favor. The court dissolved the injunction some 18 months later upon its finding, reached after an evidentiary hearing, that PACC had assigned its maintenance duties, along with related rights, to ITT Diversified Services, Inc., in violation of an essential condition of the dealership agreement and to the substantial detriment of DGC's interests. The court held that this action by PACC gave DGC just cause to terminate the agreement. The court took the view that PACC's action rendered the circumstances so different that the statutory considerations now weighed against retaining the injunction in force.

PACC contends on appeal that the court erred in finding an assignment in violation of the contract; in concluding that such a violation, even if committed, would constitute just cause for termination; and in ruling that just cause, even if present, would warrant vacating the injunction. We find no merit in any of these contentions, and we affirm the judgment of the district court.

■ The contract between PACC and ITT, along with the evidence of the parties' conduct in implementing it, supports the court's conclusion that PACC had not merely delegated a sub-agent, as the agreement authorized, but had assigned rights and duties, in violation of the agreement. Further, the evidence supports the court's finding that PACC's maintenance duty was an "essential obligation" under the agreement, and that assignment of that duty in violation of the agreement constituted nonperformance of it, giving rise to just cause for termination under the statute. The evidence also showed that the assignment to ITT "substantially affects" DGC's interests since ITT is a "known service competitor of DGC throughout the world";[2] thus the assignment established just cause for termination on the second statutory ground as well as the first.

■ Having found just cause to terminate, in contrast to its previous implicit finding of substantial performance by PACC, the court was well within its discretion to reconsider the propriety of the injunction. While the statute does not require a finding of likelihood of success as a prerequisite to issuance of an injunction, the court's view of the merits would certainly affect its judgment of the weight of the parties' interests and of the injunction's effect on the statutory policies. The court properly noted also that, after requesting and receiving an order that DGC maintain the status quo, PACC had itself made a substantial change in the relationship between the parties, in violation of the spirit if not the letter of the injunction.[3] Considering these factors, the court properly could and implicitly did conclude that the injunction no longer served its purposes and that the hardship it imposed on DGC had risen to an unjustified level. *See* 11 Wright & Miller, Federal Practice and Procedure § 2961 (1973 ed. and 1981 Supp.).

*Affirmed.*

---

**2.** PACC contests this finding of fact by the court, arguing that DGC does not compete with ITT in the Puerto Rico market since DGC is barred by the dealership agreement from any direct operations in Puerto Rico. We are unable to understand this reasoning. One obvious purpose for DGC's maintaining a dealership in Puerto Rico is to compete with ITT in the service market, through its dealer. When the dealer hands its role over to the competitor, the competition is eliminated and this purpose is defeated.

**3.** By its terms the injunction applied only to DGC, not to PACC.