NARRAGANSETT INDIAN TRIBE, et al., Plaintiffs, Appellants,

v.

Paul E. GUILBERT, Defendant, Appellee.

No. 91–1029.

United States Court of Appeals, First Circuit.

Heard May 8, 1991.

Decided May 30, 1991.

John F. Killoy, Jr., Wakefield, for appellants.

Bruce N. Goodsell, Westerly, for appellee.

Before SELYA and CYR, Circuit Judges, and COFFIN, Senior Circuit Judge.

SELYA, Circuit Judge.

This is a civil action commenced by the Narragansett Indian tribe and certain members thereof, as class representatives, to protect tribal rights and property from threatened despoliation. The Tribe itself is

federally acknowledged, 48 Fed.Reg. 6177–78 (1983), and constitutes a recognized tribe within the purview of 25 C.F.R. § 83.9(h) (1990). For convenience, we refer to the plaintiffs, collectively, as the Tribe.

## I.

### Background

The Narragansett Indians have inhabited lands within Rhode Island since time immemorial. Through the negotiated settlement of certain disputes, culminating in a Joint Memorandum of Understanding (JMU) signed in 1978, and the subsequent passage of federal and state statutes, see 25 U.S.C. §§ 1701–1716 (1983); R.I.Gen.Laws §§ 37–18–1 to 37–18–15 (1990), the Tribe acquired approximately eighteen hundred acres of real estate in or around 1979. The land is not contiguous but lies entirely within the municipal boundaries of Charlestown, Rhode Island. The land comprises what is known colloquially as the Narragansett Indian Reservation.

Defendant-appellee Paul E. Guilbert owns a parcel of land in Charlestown, the dimensions of which are roughly one hundred fifty feet by two hundred forty feet. He purchased the lot from a Narragansett Indian. It is zoned single-family residential. Guilbert wishes to build a house on it. He has received all state and local permits necessary for the planned construction.

The Tribe filed its complaint against Guilbert in federal district court on December 6, 1990, alleging that his property encroaches on the Reservation in various ways and seeking to enjoin the work. At that time, construction was already underway; Guilbert had cleared the site, laid the foundation, installed the septic system, and was about to place a modular home on the foundation. The district court granted an *ex parte* temporary restraining order and scheduled a prompt hearing on preliminary injunction. *See* Fed.R.Civ.P. 65. When the hearing concluded, the court ruled from the bench, denying the preliminary injunction and vacating the temporary restraining order. This appeal followed.

## II.

### The Preliminary Injunction Standard

To determine the appropriateness of granting or denying a preliminary injunction, we have instructed trial courts to use a quadripartite test, taking into account:

1. The likelihood of success on the merits;

2. The potential for irreparable injury;

3. A balancing of the relevant equities (most importantly, the hardship to the nonmovant if the restrainer issues as contrasted with the hardship to the movant if interim relief is withheld); and

4. The effect on the public interest of a grant or denial of the restrainer.

*See, e.g., Aoude v. Mobil Oil Corp.*, 862 F.2d 890, 892 (1st Cir.1988); *Hypertherm, Inc. v. Precision Products, Inc.*, 832 F.2d 697, 699 & n. 2 (1st Cir.1987). In turn, "[w]e scrutinize a district court's decision to grant or deny a preliminary injunction under a relatively deferential glass." *Independent Oil & Chem. Workers of Quincy, Inc. v. Procter & Gamble Mfg. Co.*, 864 F.2d 927, 929 (1st Cir.1988). Unless a mistake of law or an abuse of discretion is made manifest, we will not disturb the ruling below. *See id.; Hyde Park Partners, L.P. v. Connolly*, 839 F.2d 837, 842 (1st Cir.1988); *Planned Parenthood League v. Bellotti*, 641 F.2d 1006, 1009 (1st Cir.1981).

It is clear from the record before us that there has been no misapprehension of the correct legal standard. In deciding not to grant interim relief, the district court had the four-part test explicitly in mind. Indeed, the court specifically rested its ruling on the first two prongs of that test, finding both that the Tribe had "no reasonable probability of succeeding on the merits on the attempt to prevent the defendant from building on the lot" and that continued construction on Guilbert's property would be unlikely to cause irreparable harm *pendente lite*. The proper rule of law having been applied, "[t]he only real question is whether the district court misused his discretion in evaluating the circumstances and

calibrating the scales." *Procter & Gamble,* 864 F.2d at 929.

## III.

### *Likelihood of Success*

■ Our analysis begins with probability of success, as we have often found this furcula to be critical. *See, e.g., Public Service Co. v. West Newbury,* 835 F.2d 380, 383 (1st Cir.1987); *Lancor v. Lebanon Housing Auth.,* 760 F.2d 361, 362 (1st Cir. 1985). We preface our observations by noting that a court's conclusions as to the merits of the issues presented on preliminary injunction are to be understood as statements of probable outcomes. *See, e.g., Jimenez Fuentes v. Torres Gaztambide,* 807 F.2d 236, 238 (1st Cir.1986) (en banc), *cert. denied,* 481 U.S. 1014, 107 S.Ct. 1888, 95 L.Ed.2d 496 (1987); *Bellotti,* 641 F.2d at 1009. Thus, a party losing the battle on likelihood of success may nonetheless win the war at a succeeding trial on the merits.

To the extent that the plaintiffs' claims are based on their assertion that defendant's land is within, or abuts upon, the Reservation, we can extend no succor to them. For one thing, the district court, although recognizing certain ambiguities as to the boundaries of the area ceded to the Tribe, found as fact that Guilbert's lot was outside the perimeters of the Reservation and that any aboriginal claims to the land had been extinguished by the settlement. For another thing, neither the relevant exhibit attached to the JMU nor the town assessor's map corroborates the appellants' claim.[1] Lastly, appellants' counsel conceded in this court that he could not

yet prove whether Guilbert's land was actually tribal land.

■ On this chiaroscuro record, the court's findings, abetted by appellants' concession, easily pass Rule 65 muster. Likelihood of success cannot be woven from the gossamer threads of speculation and surmise. The Tribe's claim of a right to exercise civil authority over Guilbert's land is, in this case, largely dependent on the situs of the property. *See* R.I.Gen.Laws § 37–18–10 (1990) (the Tribe's land-use plan is to govern the use of property "owned and held" by the Tribe); *see also Montana v. United States,* 450 U.S. 544, 566, 101 S.Ct. 1245, 1258, 67 L.Ed.2d 493 (1981) (tribal authority covers "conduct of non-Indians on fee lands within its reservation").[2] At this juncture, then, the preliminary finding that the land is located beyond the sphere of tribal suzerainty severely undercuts any suggested likelihood of success on the Tribe's encroachment claims.

## IV.

### *Irreparable Harm*

The district court's alternative ground for denying a preliminary injunction was equally solid. In cases involving real property, we have often found the irreparability of the injury to be of paramount concern. *See, e.g., K-Mart Corp. v. Oriental Plaza, Inc.,* 875 F.2d 907, 914 (1st Cir.1989). The reason, of course, is that "[r]eal estate has long been thought unique, and thus, injuries to real estate interests frequently come within the ken of the chancellor." *Id.* at 915. Be that as it may, irreparable harm is not assumed; it must be demonstrated. And even where real property is involved, "[s]peculative injury does not con-

---

1. The so-called Land Use Plan for Narragansett Indian Land Claim Settlement Area (LUPNI), prepared for the Tribe by Rhode Island's state planning office, does lend arguable support to the plaintiffs' contention. This plan, however, was never meant to afford a precise delineation of the Reservation. Rather, it employs "approximate boundaries" and, as to those boundaries, is "regarded as tentative" by its authors. LUPNI at I–3. A more definitive cadastral survey, long contemplated, has yet to be completed. Under the circumstances, we will not second-guess the lower court's decision to treat the other avail-

able maps as more authoritative than Figure 1–2 of the LUPNI.

2. Tribal authority has also been held to extend to the regulation of "the activities of nonmembers who enter consensual relationships with the tribe or its members, through commercial dealing, contracts, leases, or other arrangements." *Montana,* 450 U.S. at 565, 101 S.Ct. at 1258; *see also Duro v. Reina,* —— U.S. ——, 110 S.Ct. 2053, 2061, 109 L.Ed.2d 693 (1990). No such relationship is implicated here.

stitute a showing of irreparable harm." *Public Service*, 835 F.2d at 383.

■ In this instance, the court below was satisfied that the possibility of irreparable damage to the Reservation or to any of the other claimed property rights was very faint. There had already been extensive site preparation work on the property, including the cutting of trees and clearing of underbrush, the excavation for the house's foundation, and the invasive work incident to the installation of a septic system. In other words, the parcel of land had already undergone significant transformation. The Tribe failed to particularize in any meaningful way how further progress, up to and including the actual completion, or even occupancy, of the dwelling, would wreak harm less readily repairable than that which had already transpired. Given two additional opportunities, in appellate briefing and at oral argument before us, the Tribe remained wholly unable to make the conceptual case for irreparable injury. Hence, the district court's finding must stand.[3]

### V.

### *Miscellaneous Theories*

We find none of the Tribe's remaining claims sufficient to compel reversal of the order below. We address the three principal claims briefly.

■ 1. *Rights–of–Way.* The plaintiffs claim that Guilbert is using an exclusive tribal right-of-way, Indian Church Road, without their consent. The lower court found, supportably, that the plaintiffs had not proven that the right-of-way was exclusive. Moreover, there is not a scintilla of evidence that Guilbert's use of the roadway conflicts with the Tribe's use, or that Guilbert intends to obstruct or avail himself of the right-of-way in any manner that would injure the trail or impede its utility. Absent a showing of likelihood of success on the merits (in this instance, exclusivity) and proof of interim harm, preliminary injunctive relief was not exigible on this ground.

■ 2. *Water Rights.* The plaintiffs argue that construction and occupation of the dwelling, well, and septic system will adversely impact the Tribe's reserved water rights and degrade the quality of the Reservation's water supply. The charge is plucked out of thin air, without any foundation in the record. The septic system design was approved by the Rhode Island Department of Environmental Management and was installed in accordance with rigorous requirements under a state permit. There is no proof that the system, when activated, will cause any contamination of the Reservation's groundwater. There is, equally, an absence of proof that defendant's well will significantly deplete the Tribe's substantial underground water resources. Last but not least, it is problematic whether the planned dwelling will be ready for habitation before this case is tried on the merits. It follows, we think, that the Tribe was not entitled to a preliminary injunction on this basis.

3. *Archaeology.* At oral argument, the Tribe's attorney also asserted that the preliminary injunction should have issued to protect Indian artifacts on the site. The short answer to this assertion is that the plaintiffs' brief on appeal does not advance it in any meaningful way. "It is settled in this circuit that issues adverted to on appeal in a perfunctory manner, unaccompanied by some developed argumentation, are deemed to have been abandoned." *Ryan v. Royal Ins. Co.*, 916 F.2d 731, 734 (1st Cir. 1990).[4] There is also a slightly longer, but

---

3. Of course, should the plaintiffs ultimately prevail on their claim, the trial court will have available the remedial option of prescribing injunctive relief at that time and ordering that the house be razed and the land restored. *See K–Mart*, 875 F.2d at 914–16 (upholding order for demolition of completed building and discussing the circumstances when equitable relief of that nature may be appropriate).

4. The asseveration about artifacts appears to be an antiquarian afterthought in more ways than one. The only evidence remotely touching upon artifacts was offered below not in an attempt to prove the likelihood of a significant archaeological find, but in an unsuccessful effort to show that the Guilbert property had, historically, been occupied by Indians. In arguing to the district court at the conclusion of the hearing on preliminary injunction, plaintiffs'

equally conclusive, answer to the plaint. On the record below, there was no compelling reason to believe that artifacts of historical significance existed on the Guilbert property. On this issue, the Tribe has shown neither probability of success nor irreparable harm.

## VI.

### Conclusion

We need go no further.[5] The district court gave careful consideration to a matter of some complexity. It weighed the evidence, made specific findings, and resolved the question of injunctive relief in accordance with the proper legal standard. There is no principled basis on which we can disturb its exercise of discretion. *See Procter & Gamble*, 864 F.2d at 929 (no abuse of discretion in denying preliminary injunction unless "a material factor deserving significant weight is ignored, ... an improper factor is relied upon, or ... all proper and no improper factors are assessed, but the court makes a serious mistake in weighing them"). In affirming the order, however, we also award appellee double costs, *see* Fed.R.App.P. 38, the award to run against appellants and their attorney. Hope may spring eternal, but the decision to pursue an interlocutory appeal should be based on the law and the evidence, realistically viewed after diligent inquiry, not merely on dissatisfaction with a legally unremarkable result or on a Leibnitzian assessment of a litigant's prospects.

*Affirmed. Double costs.*

---

counsel claimed that the defendant's project, if not halted, "would infringe upon [plaintiffs'] right as a sovereign, their water rights and their rights-of-way; and ... it would infringe upon [plaintiffs'] boundary rights." He did not breathe a word about artifacts or the like. The point was, therefore, doubly waived. *See Clauson v. Smith*, 823 F.2d 660, 666 (1st Cir.1987) (arguments not pressed below cannot be raised on appeal) (listing numerous First Circuit cases to like effect).

5. The defendant, relying upon cases such as *Carson v. American Brands, Inc.*, 450 U.S. 79,

101 S.Ct. 993, 67 L.Ed.2d 59 (1981), and *Chronicle Pub. Co. v. Hantzis*, 902 F.2d 1028 (1st Cir. 1990), argues that we lack jurisdiction to hear this appeal under 28 U.S.C. § 1292(a)(1). We need not decide the point. It is, after all, a "familiar principle that where an appeal presents a difficult jurisdictional issue, yet the substantive merits underlying the issue are facilely resolved in favor of the party challenging jurisdiction, the jurisdictional inquiry may be avoided." *Kotler v. American Tobacco Co.*, 926 F.2d 1217, 1221 (1st Cir.1990) (citing relevant precedents).