Isaac MENDA BITON, Plaintiff,

v.

Nelson MENDA, et al., Defendants.

Civ. No. 92–1543(PG).

United States District Court, D. Puerto Rico.

May 4, 1992.

See also: 796 F.Supp. 631.

Harvey Nachman, Santurce, P.R., for plaintiff.

David C. Indiano, Indiano, Williams & Weinstein–Bacal, Hato Rey, P.R., for defendants.

## AMENDED OPINION AND ORDER

PEREZ–GIMENEZ, District Judge.

Plaintiff, alleging violations of 18 U.S.C. § 2511, prays that the Court issue a preliminary injunction prohibiting defendants from disclosing the contents of several recorded telephone conversations between him and defendants to anyone, or to any court or adjudicative body. Plaintiff further prays that the Court order that all tapes, transcripts thereof, and notes or computer files related to these conversations, be submitted under seal into the Court's custody. Finally, plaintiff prays that defendants submit a list with the names of all persons to whom defendants have disclosed the contents of the recordings. For the reasons fully outlined below, the Court finds that plaintiff is entitled to the requested injunctive relief.

### I. The Facts

Plaintiff, Isaac Menda, is a stockbroker and former employee of Shearson Lehman Brothers. Defendant Nelson Menda is plaintiff's first cousin. Defendant Sender Shub is a childhood acquaintance of plaintiff. During the late 1980's defendants became plaintiff's clients. At some time during their business relationship, defendants decided to record their telephone conversations with plaintiff. Plaintiff never consented to these recordings, nor did defendants have a court authorization to do so. *See* Affidavit of Isaac Menda (Plaintiff's Exhibit 1).

At the present time, defendants are plaintiffs in a lawsuit against Shearson Lehman before the Chicago Board Options Exchange ("CBOE"). *See* Statement of Claim before the CBOE (Defendants' Exhibit A).[1] During a telephonic motion hearing before the CBOE, defendants' attorney

---

1. Defendants allege in their claim against Shearson Lehman that Isaac Menda, acting within the scope of his employment, 1) engaged in several unauthorized transactions; 2) violated Section 10(b) of the Securities Exchange Act; 3) made unsuitable recommendations to defendants in violation of N.A.S.D. Rule–Article III § 2; 4) violated SEC Rule 15c1–7(a) (the "Churning" rule); 5) committed common-law fraud; 6) acted negligently; 7) breached broker/dealer con-

agreed to produce a transcript of the telephone conversations between Mr. Menda and defendants for the arbitration proceedings which are to commence next Monday, May 4. *See* Transcript of telephonic hearing (Plaintiff's Exhibit 3). At this juncture in time, plaintiff is aware that the defendants have disclosed the contents of the recordings to their attorneys and to a certified translator, who translated the tapes into English and made transcripts thereof. *See* Translator's Certificate (Plaintiff's Exhibit 2). Plaintiff is also aware that defendant Nelson Menda also attempted to convince his sixteen year-old neighbor, Albert Bejar, who happens to be Isaac Menda's brother in law, to listen to the recordings. *See* Affidavit of Albert Bejar (Plaintiff's Exhibit 6). The young man declined the invitation. *Id.*

## II. Discussion

### A. The Standard for Granting a Preliminary Injunction

Our Circuit has instructed district courts to use a quadripartite standard in determining whether to grant a preliminary injunction. First, a court must determine if the plaintiff is likely to succeed on the merits of the case. Second, the court must determine the potential for irreparable injury plaintiff may suffer if the injunction is not issued. Third, the court must balance the equities, especially taking into account the hardship to the nonmovant. Finally, the court must determine what effect, if any, the issuance of the injunction will have on the public interest. *Narragansett Indian Tribe v. Guilbert*, 934 F.2d 4, 5 (1st Cir. 1991).

### B. Likelihood of Success on the Merits

■ Title 18 U.S.C. § 2511(2)(d), as amended, states:

It shall not be unlawful under this chapter for a person not acting under color of state law to intercept a wire, oral, or electronic communication where such a person is a party to the communication or where one of the parties to the communication has given prior consent to such interception **unless such communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or any State.** (Emphasis added)

This statute produces a hybrid criminal offense since it invites state law to define the offense. Therefore, the Court must look to the laws of the Commonwealth to fill in the blanks provided by Congress.

Puerto Rico's legislature deemed a prohibition against wiretapping to be such a cornerstone of Puerto Rican cultural values that it made it part of the Commonwealth's Constitution. P.R. Const. Art. II § 10; *see Camacho v. Autoridad de Teléfonos de Puerto Rico*, 868 F.2d 482, 485 (1989). As if this were not enough, the Puerto Rican legislature has made it a crime, punishable by imprisonment, to record private conversations without the express consent of all the parties. 33 L.P.R.A. § 4186. The legislature has similarly made it a crime to disclose the contents of unconsented recorded conversations. 33 L.P.R.A. § 4187[2].

This Court is of the opinion that § 2511(2)(d), as it presently reads, applied in conjunction with the Constitution and laws of this Commonwealth, will not permit the use of unconsented wiretapped recordings as evidence in civil proceedings.[3] Thus, there is a strong likelihood that plaintiff will prevail on the merits of his case.

### C. Potential for irreparable injury to plaintiff

■ In *Arroyo v. Rattan Specialties, Inc.*, 117 D.P.R. 35, 64 (1986), the Puerto

---

tracts he entered into with defendants; and 8) violated 18 U.S.C. § 1962 (the RICO Act).

**2.** Other wiretap crimes are also found in Puerto Rico's penal code. *See* 33 L.P.R.A. §§ 4185, 4188, and 4190.

**3.** The Court is aware, as defendants' attorney pointed out, that there is case law from other circuits which reaches the contrary result. *See cf. Park v. El Paso Board of Realtors*, 764 F.2d 1053 (5th Cir.1985). This case, however, was decided prior to the 1986 amendment version of section 2511(2)(d), which deleted the words "or for the purpose of committing any injurious act" from the end of the proviso.

Rico Supreme Court recognized that in Puerto Rico the right to privacy operates *ex proprio vigore*, therefore giving rise to a cause of action even amongst private individuals.[4] Plaintiff has already suffered injury since the defendants have disclosed contents of the wiretapped conversations to third parties. If the Court were to deny an injunction against defendants, defendants would continue to violate plaintiff's rights by offering the transcripts of the conversations as evidence in the arbitration proceedings before the CBOE. Thus, the potential for irreparable injury to plaintiff is very probable.

#### D. Balancing of the Equities

■ The Court finds that the balancing of the equities in this case also weighs heavily in plaintiff's favor. Even though defendants will not be able to offer as evidence before the CBOE the transcripts of the recordings, they are not precluded from testifying as to their recollection of phone conversations with Mr. Menda. Furthermore, the issuance of an injunction would in an ironic manner benefit defendants since by continuing to disclose the contents of the tapes they would be engaging in potential violations of Puerto Rico's Penal Code.

#### E. Effect of an Injunction on the Public Interest

■ The Court finds that the issuance of an injunction will have a positive effect on the public interest as it will further both Congress' and the Puerto Rico legislature's interest in prohibiting wiretaps, as well as further the right to privacy in Puerto Rico.

#### III. Conclusion

The Court finds that plaintiff has met the necessary requirements for an injunction to issue in his favor.

WHEREFORE, the Court hereby OR-DERS the following:

(1) Defendants, their attorneys and agents are enjoined from using the tape recordings and/or transcripts in any proceeding, whether in federal or state courts; whether before any federal or state agency; or in any arbitration proceeding including that before the CBOE.

(2) Defendants, their attorneys and agents are further enjoined from further disclosing the contents of the taped phone conversation and/or transcripts to anyone.

3) Defendants are ORDERED to submit a list, signed under oath, with the names of all third parties to whom the tapes and/or transcripts have been disclosed to by defendants, their attorneys or their agents.

4) Defendants are FURTHER OR-DERED to submit IN SEAL all the tapes, transcripts thereof, and notes of computer files related to these conversations, to the custody of this Court, within the next seven (7) days.

IT IS SO ORDERED.

---

**4.** Although this is a state cause of action, this Court may and hereby chooses to exercise its pendent jurisdiction to entertain it.