**PICKER INTERNATIONAL, Plaintiff,**

v.

**KODAK CARIBBEAN, LTD.,
et al., Defendants.**

**Civ. No. 93–1402 HL.**

United States District Court,
D. Puerto Rico.

June 23, 1993.

Fernando L. Gallardo, Woods & Woods, Hato Rey, PR, for Picker Intern. del Caribe, Inc.

Ricardo F. Casellas, Jay A. Garcia–Gregory, Salvador Antonetti–Zequeira, Fiddler, Gonzalez & Rodriguez, San Juan, PR, for Kodak Caribbean, Ltd.

Juan R. Marchand–Quintero, Rivera Cestero & Marchand, San Juan, PR, for Puerto Rico Hosp. Supply, Inc.

## OPINION AND ORDER

LAFFITTE, District Judge.

Before the Court is a request by plaintiff Picker International del Caribe, Inc. ("Picker") for a preliminary injunction under the Puerto Rico Dealer's Act[1], commonly known as "Law 75." Picker is a Delaware corporation with its principal place of business in San Juan, Puerto Rico. It sells medical supplies to hospitals and other facilities. Defendant Kodak Caribbean, Ltd. ("Kodak") supplies health care products, film, and equipment for hospitals and other medical facilities. Defendant Puerto Rico Hospital Supply, Inc. ("PRHS") is a Puerto Rico corporation that competes with Picker in the sale of medical supplies. Prior to the occurrences which give rise to this action, both Picker and PRHS were selling Kodak products in Puerto Rico. Kodak's relationship with Picker had been based on verbal agreements. In February of this year Kodak terminated, for reasons that are in dispute, this relationship. In response to its termination, Picker brought this action. Of the seven causes of action that Picker claims, five allege price maintenance, tie-ins, attempted monopolization, and other violations of anti-trust laws.

At the time that it filed its complaint, Picker also moved for a preliminary injunction under Law 75 to maintain in force the agreement between Picker and Kodak and to enjoin Kodak and PRHS from doing business with any of Picker's current customers. Picker also sought injunctive relief to prevent Defendants from doing business with any of Picker's potential customers who may be interested in Kodak products and to require that any orders for Kodak products made by these potential customers be done through Picker. Picker requested that a hearing be held on its request for injunctive relief. Because Picker's suit was primarily based on alleged anti-trust violations, the Court ordered Defendants to respond to Picker's motion for injunctive relief to allow the Court to determine whether a hearing was necessary. PRHS and Kodak filed oppositions[2] along with documentary evidence, and Picker filed a reply,[3] also supported with documentary evidence, to these oppositions. Kodak subsequently filed a response[4] to Picker's reply, and Picker submitted an answer[5] to Kodak's response. Both Kodak's response and Picker's answer to the response contained documentary evidence.

■■■ As mentioned above, Picker has requested a hearing on this issue. However, a court need not hold a hearing before ruling on whether to issue a preliminary injunction. *Bradley v. Pittsburgh Bd. of Educ.*, 910 F.2d 1172, 1175 (3rd Cir.1990); *Aoude v. Mobil Oil Corp.*, 862 F.2d 890, 893 (1st Cir.1988). A hearing is not necessary where the parties have exercised their ample opportunity to submit briefs on the question. *Town of Burlington v. Dep't. of Educ.*, 655 F.2d 428, 433 (1st Cir.1981). As detailed above, the parties in this case have submitted a number of briefs with supporting evidence. The Court is able, from a review of all these briefs and evidence, to reach a decision on the issue of whether to issue a preliminary injunction. Accordingly, it will not hold a hearing on this matter.

## LEGAL STANDARD

■■■ Law 75 was enacted to prevent suppliers from terminating without just

---

1. P.R.Laws Ann. tit. 10, §§ 278–278d (1976).

2. Docket nos. 11 and 12, respectively.

3. Docket no. 16.

4. Docket no. 25.

5. Tendered on June 11, 1993 and considered by the Court.

cause distributorship agreements with dealers in Puerto Rico once these dealers had developed a profitable market for the suppliers' products. *Lineas Aéreas Costarricenses, S.A. v. Caribbean General, Inc.*, 682 F.Supp. 117, 124 (D.P.R.1988). Article 3–A of Law 75 provides for a preliminary injunction to keep the dealership contract in force during the litigation.[6] This provision is intended to protect the dealer from economic losses that it may suffer once the contract has been terminated and before litigation on the matter has been resolved. *Systema de Puerto Rico, Inc. v. Interface Int., Inc.*, 89 JTS 26, 6655, Slip op. English translation at 5–6 (1989). The moving party has the burden of showing why the request for preliminary injunction should be granted. *Cobos Liccia v. Dejean Packing Co.*, 89 JTS 104, 7253 (1989). Courts should not be quick to issue preliminary injunctions in these cases; the equities and interests of all sides must be carefully considered. *Systema*, 89 JTS at 6655, English translation at 6. In evaluating a request for a preliminary injunction under Law 75, a court must consider (1) the public policy of the law, (2) the interests of the parties, and (3) whether the plaintiff is a dealer. *Cobos Liccia*, 89 JTS at 7254; P.R.Laws Ann. tit. 10, § 278b–1.

■ The first two criteria mentioned above—public policy and the parties' interests—are similar to the traditional test for a preliminary injunction. The traditional test has four factors: the threat of an irreparable injury to the moving party; a balancing of the relevant equities, especially with regard to potential harm to the nonmoving party; the likelihood that the moving party will ultimately succeed on the merits; and whether an injunction would serve the public interest. *Narragansett Indian Tribe v. Guilbert*, 934 F.2d 4, 5 (1st Cir.1991). The Law 75 requirements to consider the parties' inter-

ests and the law's public policy would necessarily require a court to consider whether there exists a threat of irreparable injury to the plaintiff. These Law 75 requirements would also require the court to balance the relevant equities, especially with regard to the potential harm that a preliminary injunction would have on the nonmoving party. Additionally, a consideration of the public policy of Law 75 would involve an examination of whether there was just cause for the termination of the contract. This would in effect be an examination of the movant's likelihood of success. *See Luis Rosario, Inc. v. Amana Refrigeration, Inc.*, 733 F.2d 172, 173 (1st Cir.1984).

■ Moreover, a review of the case law on Law 75 reveals the overlap between the traditional standards for a preliminary injunction and the standards for an injunction under Law 75. In considering a district court's denial of a preliminary injunction, the First Circuit noted that while Law 75 does not require a district court to consider likelihood of success, neither does it forbid the consideration of this factor. *Id.* Furthermore, the public policy of the act was to prevent dealer termination without just cause, and the parties' interests would depend on the likelihood that just cause would be found. *Id.* In another case it was held that, while a finding of likelihood of success was not a prerequisite to issuing an injunction, a court's view of the merits would affect its interpretation of the parties' interests and the injunction's effect on the law's public policy. *Pan American Computer Corp. v. Data General Corp.*, 652 F.2d 215, 217 (1st Cir.1981). Lastly, the Puerto Rico Supreme Court has stated that in considering whether to issue a preliminary injunction under Law 75, "the courts should apply the equity tests established in the classical injunction case law, tempered for pur-

---

**6.** Article 3–A provides as follows:

**Provisional remedy**

In any litigation in which there is directly or indirectly involved the termination of a dealer's contract or any act in prejudice of the relation established between the principal or grantor and the dealer, the Court may grant, during the time the litigation is pending solution, any provisional remedy or measure of an interdictory nature to do or to desist from

doing, ordering any of the parties, or both, to continue, in all its terms, the relation established by the dealer's contract, and/or to abstain from performing any act or any omission in prejudice thereof. In any case in which the provisional remedy herein provided is requested, the Court shall consider the interests of all parties concerned and the purposes of the public policy contained in this chapter.
P.R.Laws Ann. tit. 10, § 278b–1 (1976).

poses of Act No. 75." *Systema*, 89 JTS at 6655, English translation at 6. Thus, a court should consider both the traditional standards for a preliminary injunction, as well as those enumerated in Law 75.

## DISCUSSION

As mentioned above, one of the factors that a court must consider in determining whether to issue a preliminary injunction is the plaintiff's interests. *Cobos Liccia*, 89 JTS at 7254. Specifically, a court may issue a preliminary injunction where there is a risk of irreparable injury to the plaintiff. *Narragansett*, 934 F.2d at 5. In its initial motion for a preliminary injunction and in its two supporting briefs, Picker alleges that it will suffer economic harm if injunctive relief is not granted. However, Picker does not allege in its briefs, nor show in its supporting documentary evidence, that it will suffer irreparable injury if the Court does not issue a preliminary injunction. Thus, it has not met its burden on this factor. Additionally, Law 75 contains provisions to compensate Picker for its damages if it is successful in showing that it was a dealer and that Kodak terminated the agreement with Picker without just cause. *See* P.R.Laws Ann. tit. 10, § 278b; *Amana Refrigeration*, 733 F.2d at 174. Because courts should not be quick to use the drastic step of issuing a preliminary injunction, because Picker has not met its burden of showing a threat of irreparable injury, and because Law 75 provides Picker with compensation for damages in the event that it succeeds, the Court does not find it necessary to issue a preliminary injunction.

Furthermore, a court must also balance the equities of the case and consider the defendants' interests. *Cobos Liccia*, 89 JTS at 7254. In addition to requesting that its relationship with Kodak be re-established, Picker seeks to enjoin Defendants from doing business with Picker's "potential customers" and to require that any purchases of Kodak products made by these potential customers be done through Picker. To enjoin Kodak and PRHS from doing business with these potential customers would unduly restrain free trade. This would not only be harmful to Defendants' interests, it would also be contrary to the public interest as a whole.

Moreover, Kodak claims that Picker, while the relationship between it and Kodak still existed, engaged in bad faith behavior detrimental to Kodak. Specifically, Kodak claims that Picker promoted the products of Kodak's competitors over those of Kodak; that Picker, in contravention of Kodak policy, engaged in "grey marketing" by selling in the continental United States Kodak products that were priced for and intended to be sold outside the continental United States; and that Picker, as a supplier of Kodak goods, had access to information on the prices that Kodak or PRHS were going to submit at bids for hospital contracts and that Picker would use this information to submit a lower price for a competing product. The Court does not, and can not, rule now on the truth of these allegations. However, they do raise the specter of harm to Kodak if a preliminary injunction were to issue. Additionally, if these allegations are ultimately found to be true, Kodak would have a defense of just cause for terminating its relationship with Picker. Based on the allegations and evidence provided in the parties' briefs, the Court holds that Picker has not met its burden to show that a preliminary injunction should be issued.

Under Law 75, Picker must also be a dealer for a preliminary injunction to issue. However, because the Court has determined that an injunction is not warranted based on the above-discussed factors, it is not necessary to proceed to a determination on whether Picker is a dealer for purposes of Law 75. Lastly, the Court notes that Picker's motions on the preliminary injunction issue are couched in terms of anti-trust and that the thrust of Picker's complaint is for alleged anti-trust violations. However, the issue currently before the Court arises under Law 75. Thus, whether the behavior of which Picker complains violates the anti-trust laws is not relevant for purposes of this order.

WHEREFORE, the Court **denies** Picker's motion for injunctive relief under Law 75.

**IT IS SO ORDERED.**