FDIC v. Shafmaster                    CV-95-061-L   05/30/95

**THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE**


Federal Deposit Insurance
 Corporation, as Receiver of
 New Bank of New England,

     v.                                        # C-95-61-L

Jonathan S. Shafmaster, Clive W.
 Wang and Roger A. Healey


### ORDER

Currently before the court are plaintiff's, Federal Deposit
Insurance Corporation (FDIC), motions for real estate attachment
(Docs. 3, 4 and 5) and plaintiff's motion for preliminary
injunction (Doc. 2).  For the reasons stated below, plaintiff's
motions are denied.


BACKGROUND

On October 16, 1987, defendants, Jonathan Shafmaster, Clive
Wang and Roger Healey, executed a Guaranty for the purpose of
acquiring a loan from the Bank of New England in the amount of
eight million, five hundred thousand dollars.  Pursuant to the
Guaranty, the guarantors (defendants) guaranteed twenty percent
of the entire outstanding principal indebtedness as of the time
of the guaranty's enforcement.

On January 6, 1991, the Bank of New England was declared

insolvent and the FDIC was appointed its receiver. All rights, title, and interest of the Bank of New England in the Note and Guaranty were assigned to a newly created national banking association, New Bank of New England, N.A.

Effective July 13, 1991, FDIC determined that New Bank of New England was to be dissolved. As a consequence, the Office of the Comptroller of the Currency of the United States appointed the FDIC as receiver. While New Bank Receiver immediately became the holder of many of the assets of New Bank of New England, other assets including those notes and guaranty associated with the defendants were assigned to Fleet Bank of Massachusetts.

On or around September, 1993, defendants defaulted on their obligations to Fleet by failing to make payments when due.

On or around September, 1993, the Note, Guaranty, and Loan Documents were assigned to New Bank Receiver. On or around April 26, 1994, New Bank Receiver, as holder, accelerated the Note and made demand on defendants for payment in full, relative to their respective obligations. As of November 18, 1994, the principal of the Note was outstanding in the amount of $8,488,200.00. Plaintiff, as receiver, has brought suit against defendants based on the Guaranty and reaffirmed Guaranty.

DISCUSSION

I.    Motions for Attachment (Docs. 3, 4 and 5)

Plaintiff now moves, pursuant to Federal Rule of Civil Procedure 64 and New Hampshire Revised Statutes Annotated (RSA) § 511:A-1 (1994), for a general real estate attachment of all right, title, and interest of defendants' real property.

It is axiomatic that "[t]he availability of a prejudgment attachment in federal court is governed by the law of the state in which the district court sits." Diane Holly Corp. v. Bruno & Stillman Yacht Co. Inc., 559 F. Supp. 559, 560 (D.N.H. 1983); Fed. R. Civ. P. 64.  In a hearing concerning attachment, RSA § 511-A:3 provides:

> the burden shall be upon the plaintiff to show that there is a reasonable likelihood that the plaintiff will recover judgment including interest and costs on any amount equal to or greater than the amount of the attachment.  Upon satisfying said burden, the plaintiff shall be entitled to the attachment unless the defendant establishes to the satisfaction of the court that his assets will be sufficient to satisfy such judgment . . . .

As provided in RSA § 511-A:3, in considering a motion for attachment a court is obligated to consider whether the party requesting attachment has a reasonable likelihood of recovering a judgment and whether the assets of the party opposing attachment are sufficient to satisfy any potential judgment.

In the case at hand, given the specificity of the affidavits

3

provided by defendants concerning their financial status, the court need not delve into an intricate discussion of whether the FDIC has established a reasonable likelihood of recovering a judgment. Rather, the defendants have established to the satisfaction of this court that their assets are well in excess of the plaintiff's demand of $1,697,640.00. From the various affidavits submitted by the defendants, it is evident that defendants' assets exceed their liabilities by roughly $28 million and thus under RSA § 511:A-1 the court is empowered to deny the requested attachments. This being the case, the plaintiff's motions (Docs. 3, 4 and 5) for attachment are denied.

II. Motion for Preliminary Injunction (Doc. 2)

In seeking to protect the value of any assets that may satisfy a potential judgment in this case, plaintiff requests the court to issue a preliminary injunction against defendants containing the following language:

> Jonathan S. Shafmaster, Clive W. Wang, and Roger A. Healey, and their respective agents, servants, employees, and attorneys, and all persons in concert or participation with them, and all persons with notice of the order, and each and every one of them, are enjoined from directly or indirectly assigning, alienating, selling, transferring, pledging, encumbering, concealing, or in any other manner, disposing of, diminishing, or reducing the value of their assets, including all equitable, beneficial, partnership, and shareholder interests and rights, and right to the payment of money, other than for ordinary and normal

4

living expenses, without further order of this Court of written consent of New Bank Receiver.

The law is well-established that in considering the appropriateness of granting or denying a preliminary injunction, courts shall use a quadripartite test.  This test takes into account:

1.    The likelihood of success on the merits;

2.    The potential for irreparable injury;

3.    A balancing of the relevant equities; and

4.    The effect on the public interest of a grant or denial of the restrainer.

Narragansett Indian Tribe v. Guilbert, 934 F.2d 4, 5 (1st Cir. 1991).

In beginning the quadripartite analysis concerning the issuance of a preliminary injunction, courts have often considered the first partite to be most critical.  Id. at 6; see also Public Service Co. v. West Newbury, 835 F.2d 380, 383 (1st Cir. 1987); Lancor v. Lebanon Housing Auth., 760 F.2d 361, 362 (1st Cir. 1985).

In the case at hand, defendants have raised serious questions as to plaintiff's likelihood of success on the merits. Succinctly, even though complete discovery is still untapped in this matter, the defenses and counterclaims asserted by

5

defendants nonetheless give way to very substantial questions concerning fact and law. Given such questions, it would be extremely premature to cast plaintiff's complaint and various other pleadings in a manner which necessitates a finding of likelihood of success on the merits.

Even assuming, for the sake of argument, that this court found a likelihood of success on the merits, the plaintiff would have a difficult time satisfying the remaining three elements necessary for issuance of an injunction.

First, at this stage of the proceeding, the actions or inactions of defendant are not causing irreparable harm to the plaintiff. Rather, plaintiff seeks protection for injury that might possibly occur sometime in the future. Thus, plaintiff is making an assumption of injury rather than an actual demonstration. See Narragansett Indian Tribe, 934 F.2d at 6 ("irreparable harm is not assumed; it must be demonstrated.").

Secondly, in balancing the relevant equities, the court is persuaded that any positive effect on the plaintiff following issuance of an injunction would be greatly outweighed by the negative effect on the defendants. Specifically, given the list of defendants' business activities in which plaintiff seeks to control or limit via an injunction, it is beyond peradventure that the granting of such an injunction would greatly hamper

6

defendants' ability to efficiently and effectively conduct normal business procedures. Thus, in balancing the equities, the damages attributable to plaintiff following denial of the injunction would be speculative at best, whereas the damages attributable to defendants following the granting of an injunction could be predicted with relative certainty.

Finally, upon the issuance of an injunction limiting defendants' businesses, there would likely be an adverse effect on the public interest, albeit minimal. Fundamentally, given the broad nature of the businesses which would be subject to the injunction, certain sectors of a local economy would likely suffer upon the issuance of such an injunction. Conversely, there appears to be no significant negative effect on the public by denying plaintiff's request for injunction. Certainly, the actions or inactions which are the subject of plaintiff's request cannot be construed in a manner intended to protect the public from continued harm or damage.

Given this court's consideration concerning the likelihood of plaintiff's success on the merits, the potential for irreparable injury if an injunction is not issued, the balancing of the relevant equities, and the effect on the public interest, the plaintiff's motion requesting a preliminary injunction against defendants Shafmaster, Wang and Healey must be denied.

7

As a tangential but relevant consideration, the court is cognizant that plaintiff's request for preliminary injunction has significant semblance to its requests for attachments of defendants' various assets. Noting the prior discussion concerning attachment of certain property and the denial of plaintiff's request for attachment, the court is heedful of the fact that the plaintiff ought not be permitted to do indirectly through an injunction what it has been precluded from doing directly through an attachment.

CONCLUSION

For the aforementioned reasons, plaintiff's motions for attachment (Doc. 3, 4 and 5) and preliminary injunction (Doc. 2) are denied.

May 30, 1995

_____
Martin F. Loughlin
Senior Judge

Margaret P. Franklin, Esq.
David Aisenberg, Esq.
Bruce A. Harwood, Esq.

8